No. 16,460.

CARR *v.* BOYD.
(229 P. [2d] 659)

Decided March 5, 1951.   Rehearing denied March 26, 1951.

Messrs. JANUARY & YEGGE, MARGARET R. BATES, for plaintiff in error.

Messrs. WOLVINGTON & WORMWOOD, for defendant in error.

*In Department.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

CARR, plaintiff in error, as plaintiff below, filed his complaint in damages on May 27, 1948, alleging that on August 23, 1947, on U. S. Highway No. 40, two miles west of the junction of Colorado Highway No. 93, defendant drove her automobile so negligently, carelessly and recklessly as to cause it to collide with plaintiff's automobile; that as a result of such negligence, plaintiff received serious and disabling injuries; and loss of income, as a railroad employee, of $3,600 per year by reason of permanent total disability, and for doctor bills and hospitalization and total loss of his automobile. He prayed for judgment in the sum of $20,000. On motion therefor, he filed a bill of particulars as to the items of medical and hospital expense and automobile damage.

Following, and on a date we are unable to determine from the record, defendant filed her answer and cross complaint (prior to trial defendant withdrew her cross complaint), denying each and every allegation in the complaint; that all injuries and damage, if any, suffered by plaintiff were the proximate result of his contributory negligence; as a third defense, alleged that subsequent to the accident, plaintiff made application for benefits under the railroad unemployment insurance act, alleged disability as a result of the accident and

subsequently such benefits were awarded to plaintiff; that the board thereafter notified defendant that such benefits were being paid; and then set out the pertinent section of the Railroad Unemployment Insurance Act, Title 45, U.S.C.A., p. 241, Supp., which is: Section 362 (o): "Benefits payable to an employee with respect to days of sickness shall be payable regardless of the liability of any person to pay damages for such infirmity. The Board shall be entitled to reimbursement from any sum or damages paid or payable to such employee or other person through suit, compromise, settlement, judgment, or otherwise on account of any liability (other than a liability under a health, sickness, accident, or similar insurance policy) based upon such infirmity, to the extent that it will have paid or will pay benefits for days of sickness resulting from such infirmity. Upon notice to the person against whom such right or claim exists or is asserted, the Board shall have a lien upon such right or claim, any judgment obtained thereunder, and any sum or damages paid under such right or claim, to the extent of the amount to which the Board is entitled by way of reimbursement."

Defendant further alleged that, by operation of law plaintiff had assigned to the Railroad Retirement Board to the extent of payments by said board to the plaintiff, any right of action he may have against this defendant; that the Railroad Retirement Board is an indispensable party to this suit; that for these reasons defendant is entitled to judgment of dismissal of plaintiff's complaint.

Plaintiff's attorneys filed motion to strike third defense, which is the allegations concerning the Railroad Retirement Board, because same did not constitute a defense to plaintiff's cause of action. The motion to strike was overruled and a jury on December 28, 1948, returned a verdict in favor of defendant. Motion for new trial was overruled and judgment entered on the verdict April 2, 1949.

Plaintiff specifies as error, and contends, that it was

error for the trial court to admit any evidence relating to the fact that plaintiff, after the accident, had received benefits from the Railroad Retirement Board by virtue of the unemployment insurance act; that the evidence of negligence on the part of plaintiff is not sufficient to support the verdict against him; that counsel for defendant made a prejudicial statement to the jury in his opening remarks; and finally, that the court erred in giving an instruction on "unavoidable accident."

The record discloses no positive objection to the giving of the unavoidable-accident instruction and counsel frankly admits that opposing counsel's objection to this specification of error is difficult to overcome because of the failure to note an objection to the giving of this instruction at the trial. The record containing this given instruction is before us and we are at liberty, on our own motion, to determine whether or not it was properly given, and if improperly given, then the prejudicial effect thereof. The interest of a litigant should not always be precluded on a technical inadvertence of counsel.

Plaintiff in his car was traveling west, and defendant east, on an oil-paved mountain highway, thirty feet wide, having only one lane of travel on each side of the center line thereof; the pavement was wet from rain at the time of the accident; and the road was straight, with a down grade toward the east. Defendant, driving east, attempted to pass a line of automobiles going in the same direction. The traffic was heavy, there being a long line of cars both in front of, and behind, defendant. She does not remember looking as far to the east ahead of her as she could see before she turned into the westbound lane in an effort to pass some automobiles ahead of her. She said that she drove out on the left side of the road and some of the automobiles speeded up; that she could not get back into her line of traffic, and her car started to skid when she became frightened and applied her brakes. She also said that she was traveling

about thirty-five miles per hour in order to get around the cars which she intended to pass; that she did not see plaintiff's car until she was out on his side of the highway, and she then realized she was not going to be able to get back in her line of traffic. Her car skidded diagonally and the rear part of it struck the front end of plaintiff's automobile.

Plaintiff testified as to the damages to his automobile, as to the nature of his injuries and hospitalization and medical expense; and, with reference to the accident, stated that at about five o'clock in the afternoon he was on the way to his home in Idaho Springs from his place of employment at the Chicago and Burlington shop in Denver, and was traveling almost due west, possibly between thirty-five and forty miles an hour; that there was a continuous string of cars going east, some ten or fifteen feet apart, others maybe a little farther; it was drizzling rain and the road surface was wet; there is a slight bend in the road and when he came around the bend to the straight way, he had a clear vision of the road; he saw a car pull out of the lane of traffic into his lane; it was going east and pulled back toward the line of traffic; that evidently it could not get back into it and pulled out again, and that the driver apparently applied the brakes or something because the car went into a skid, and the back end of it hit the front end of his car; the car was skidding and zigzagging across the line of westbound traffic; if the car had been coming straight down the road, he could have passed, but when it was crosswise he could not; he had put on his brakes and was almost to a stop when the collision occurred; he could not get out of the way on account of the line of traffic on the other side of the road and the narrow shoulder and ditch on the right side.

No other eyewitness testified as to the accident. An officer of the state highway patrol, who arrived soon after the accident, testified that he found defendant's automobile turned over in the barrow pit on the north

side of the road, while plaintiff's car was still on its wheels; that there were skid marks showing that plaintiff's car had been knocked back eight feet by the impact, and there were twelve feet of skid marks made by plaintiff's car just prior to the point of impact; that defendant stated she started to pass other east-bound traffic and was not able to get her car back into the east-bound lane; that she became frightened, applied the brakes, and went into a skid; that there is a ditch to the north of the highway from one to three feet deep.

Counsel for plaintiff contends that the only issue in the case to be determined is, whose negligence proximately caused the collision, and, of course, the attending damages, if any. It also is contended that this being the only issue, it was error to admit evidence to the effect that plaintiff had received benefits under the Railroad Unemployment Insurance Act after the accident and that the Railroad Retirement Board might have a lien to the extent of benefits paid to plaintiff on any judgment in his favor. In this connection, defendant's exhibits 7, 8 and 9, admitted over the continued objections of plaintiff, were in substance, as follows:

Exhibit No. 7 was a letter written by the regional director on the railroad retirement board stationery and addressed to defendant calling her attention to section 12 (o) of the federal statute, which was set out in defendant's answer, and reminding defendant "that the Board has a right to recover any sickness benefits paid to the above-named claimant from any settlements which may be or have been made to him because of the automobile accident."

Exhibit No. 8, another letter from the regional director to defendant stating that plaintiff had made application for sickness benefits resulting from the accident, again quoting the section of the statute, and requested that the board be notified as to any amount payable whether for time lost, the date of the days for which loss was payable, and further requesting defend-

ant to withhold payments to plaintiff until further instructions from the office.

Exhibit No. 9 is a letter to attorneys for plaintiff in response to a request for certain information which they were authorized by plaintiff to obtain. This letter refuses some information and discloses other. It shows that plaintiff received sick benefits in the amount of $650 during the period of September 15, 1947 to March 28, 1948; and further stated that no determination had been made with respect to the period of time that plaintiff could not work, and made no determination of any amount that might have been paid to plaintiff because of the physical condition which was not due to the accident. Counsel's complaint as to this letter is that the letter shows that plaintiff received benefits without any determination at all as to whether it was for disability due to the accident or some other cause.

█ Due to the nature of the evidence and these exhibits, it undoubtedly was the purpose of counsel for defendant that to introduce such evidence and have it admitted, would negate or lessen the liability, if any, of defendant, because such evidence has no place in this action for damages and the admission thereof was clearly erroneous. Plaintiff, by virtue of his employment, was a beneficiary under a benefit plan provided by the Railroad Unemployment Insurance Act. At page 617 of 15 American Jurisprudence, it is stated:

§201. "It is well settled that the damages recoverable for a wrong are not diminished by the fact that the party injured has been wholly or partly indemnified for his loss by insurance effected by him and to the procurement of which the wrongdoer did not contribute.

\* \* \*

"Of the same character as insurance money proper are the sick benefits and other aids received from benefit societies, fraternal societies, and other organizations of that class. Benefits received by the plaintiff from a source other than the defendant and to which he has not

contributed are not to be considered in assessing the damages. The same has been held true of compensation received by an employee from a benefit fund maintained by the employer."

This thoroughly established principle is followed in *Riss & Co. v. Anderson,* 108 Colo. 78, 114 P. (2d) 278, where this court said: "It is urged that the amount received under the so-called benefit plan should be considered in mitigation of damages. If the benefit plan is in fact in lieu of workmen's compensation insurance, clearly, for the reasons stated, it should not be so considered. If it is not in lieu of workmen's compensation insurance, but is a part of the compensation of plaintiff as an employee of the telephone company, then he bought and paid for such insurance as clearly as though he had purchased an accident policy. In such case a tort-feasor may not plead his victim's prudence and foresight to relieve him from the consequences of his own wrong."

█ . The testimony and exhibits were wholly irrelevant and not material to the issue, and it is established by the dominant weight of authority that any benefits paid by the Railroad Retirement Board to plaintiff in the case at bar cannot be taken advantage of by defendant to mitigate the damage or otherwise. The confusion that could easily arise in the minds of the jurors may have affected the verdict, and therefore it cannot be disregarded. Counsel for defendant states that this evidence did not go to the question of liability, but only to the question of damages, and then further states that the jury returned a verdict for the defendant on the question of damages, so even if the evidence was inadmissible, it is not reversible error as the alleged inadmissible evidence went to the question of damages alone; therefore, the jury never had occasion to consider the alleged inadmissible evidence. This is followed by a further statement of defendant's counsel that the evidence was not introduced for the purpose of mitigating the damages,

but was introduced in an attempt to show how much time plaintiff claimed to have lost from work as a result of the accident. Finding defendant's counsel in this dilemma, we fail to follow his line of reasoning. He admits that the evidence was inadmissible in the mitigation of damages, and then contends that plaintiff's objections were cured by instruction 12-A, which is as follows: "In the event you find for plaintiff, the fact that plaintiff has drawn disability benefits from the Railroad Retirement Board should not be considered by you in determining what loss of income, if any, the plaintiff has incurred or will incur as a result of disability from this accident."

If, as admitted, the evidence was inadmissible as to the mitigation of damages, why introduce it and then instruct against it? At another place, counsel for defendant says that the evidence was introduced in an attempt to show how much time plaintiff claimed to have lost from work as a result of the accident. This is the last lethal dose of a seemingly fatal error, because at no place in any of the exhibits is there any indication as to the extent of the disability sustained by plaintiff as a result of the accident. In fact, Exhibit 9 clearly shows that such information would not be disclosed except in a court proceeding relating to a claim for benefits by the employee under the act. Neither does any exhibit show how much time plaintiff lost as a result of the accident, and the exhibit further shows that the board made no determination between benefits which might or might not have been paid to plaintiff on account of the accident or a physical condition not due to the accident. The court entertained serious doubt as to the admissibility of these exhibits because in overruling the objection thereto he stated, " * * * I don't know exactly what to do with this kind of a case."

In this state of confusion, it would have been easy for the jury to have concluded that the real controversy was brought on by the fact that the retirement board was

making claim for the proceeds of any verdict that might be awarded to plaintiff, and, of course, further conclude that plaintiff would lose nothing by reason of having been paid or was fully protected. The evidence was wholly inadmissible for the purpose of mitigating damages, and was irrelevant and immaterial, and could not prove or disprove the real issue in the case, that of the proximate cause of the accident.

█ In the opening statement of counsel for defendant, it was said, "Mr. Carr continued coming up ahead, not clear off of the road, but right on the oiled part of the road. In fact, the evidence will show—I believe it was the day following the accident or a couple of days following the accident—he made the statement to Miss Boyd's mother that, 'I was on my own side of the road and I wasn't going to let her put me over.'" It is shown that defendant's mother was present in the courtroom throughout the trial, but she was not called to testify. The statement of counsel, standing without support, had the effect of damaging evidence against plaintiff, but it could not be rebutted without emphasizing the unproven statement. Counsel for defendant frankly admits in his brief he is going outside of the record in saying that they were afraid to call defendant's mother on account of her belligerent attitude toward plaintiff and were afraid as to how she would hold up under cross-examination. While this may be true, it does not excuse counsel for not knowing the attitude of the witness prior to the trial, and at least at the time of making the statement to the jury. We do not feel that this was a deliberate attempt on the part of counsel to prejudice the jury; however, the damaging effect of his carelessness therein must be charged against him. The statement could not be made, and allowed to stand, without great probability that it created passion and prejudice in the minds of the jurors.

Either or both of the two errors discussed were sufficient to warrant the granting of a new trial, and since

the judgment must be reversed and new trial ordered, we indulge in no further discussion of the other errors specified, namely, that the evidence does not support the verdict of the jury and that an instruction on unavoidable accident was improper, other than to say it is extremely doubtful that if the errors here determined were excluded and a jury properly instructed, that the verdict would have been for the defendant on the evidence as set out herein, since it appears therefrom that defendant, in the exercise of bad judgment in the face of existing conditions, placed herself in an unfortunate position from which she could not extricate herself, all without contributing fault on the part of plaintiff. This being true, there was no place in the case for an instruction on unavoidable accident.

The judgment is reversed and the cause remanded with directions to grant a new trial, and further proceedings to be in consonance with the views herein expressed.

MR. CHIEF JUSTICE JACKSON and MR. JUSTICE HAYS concur.