138 So.2d 765 (1962)
Robert SIRMONS, Jr., Appellant,
v.
Perry H. PITTMAN and Thelma A. Drummond, Appellees.
No. C-432.
District Court of Appeal of Florida. First District.
March 13, 1962.
Rehearing Denied April 4, 1962.
*766 Long, Butler & Nelson, Jacksonville, for appellant.
Mathews, Osborne & Ehrlich, Harvey Mabry, and Howell, Kirby, Montgomery & Sands, Jacksonville, for appellees.
STURGIS, Judge.
The appellant, Robert Sirmons, Jr., was plaintiff below in separate negligence actions, involving the same state of facts, against Perry H. Pittman and Thelma A. Drummond. On motion of defendant Pittman a summary final judgment was entered in his favor. Final judgment in favor of defendant Drummond was entered pursuant to verdict of the jury. This appeal is taken to review both judgments. The judgment in favor of defendant Pittman is affirmed. The judgment in favor of defendant Drummond is reversed and the cause remanded for a new trial.
These suits grow out of an automobile accident in which an automobile operated by defendant Pittman collided with an automobile operated by defendant Drummond, resulting in the death of Flora Smith Sirmons, plaintiff's wife, who was a guest passenger in the car driven by defendant Drummond. The suit against defendant Pittman, for damages arising from the death of Mrs. Sirmons, is predicated upon the alleged simple negligence of said defendant. The *767 companion suit against defendant Drummond, under the Guest Statute, is predicated upon the alleged gross negligence of said defendant.

Re Pittman Judgment
The point for determination in the appeal involving defendant Pittman is whether on the depositions, affidavits, and evidentiary matters before the court on defendant's motion for summary judgment, there existed a genuine issue as to a material fact requiring the case to be submitted to the jury. The uncontested proofs before the court on said motion reflect:
Plaintiff's wife met her death as the result of a collision between automobiles operated by defendants Pittman and Drummond, she being a guest passenger in the latter. The time was early on a Sunday afternoon. The day was cloudy but the pavement was dry. Defendant Pittman was driving his Ford sedan northerly in his proper lane of traffic on two-laned Blanding Boulevard, at a point near to but outside the city limits of Jacksonville, Florida, and in an area in which the permissible speed limit was 45 miles per hour. His wife and son were passengers therein. As he approached the intersection of Blanding Boulevard with 118th Street, where there was an overhanging caution light, he reduced his speed from approximately 40 mph to between 30 and 35 mph, which he maintained as he passed through the intersection and until, in apprehension of an impending accident involving an automobile driven by defendant Drummond, who was approaching from the north in the opposite lane of travel, he applied his brakes and skidded directly ahead a distance of approximately 60 feet, where his automobile collided with the right side of the automobile driven by defendant Drummond, which had rapidly skidded over from the southbound into the northbound lane of traffic immediately ahead of the Pittman automobile.
The reason assigned by defendant Pittman for anticipating an accident and applying his brakes was that when he had passed through the intersection and had arrived at a point about even with the front end of the second of four cars which were facing south in the same lane of travel of the Drummond automobile and had either come to a stop or were in process of doing so in obedience to a signal of the leading car of intent to turn to its left at the intersection, he observed the Drummond vehicle approaching at a point approximately 55 yards north of his position at what he estimated to be a speed of 55 to 60 mph, and believed that the Drummond vehicle so traveling would become involved in an accident. Upon applying the brakes his automobile skidded straight ahead a distance of approximately 60 feet where three to four seconds later it collided with the Drummond vehicle which in the meantime had crossed over from the opposite lane of travel directly into his path. Pittman took no other action to avoid the collision, which took place entirely in his lane of traffic.
According to defendant Drummond's deposition, as she approached the intersection from the north, going south, she was following a Volkswagen which was about four lengths ahead, and was traveling at a speed of 35 to 40 mph; she observed the yellow intersection light and continued to maintain that speed; a car ahead of the Volkswagen, which was fourth in line (hers being the fifth), came to a stop to make a left turn at the intersection, and when the Volkswagen came to a stop back of it she applied her brakes, started skidding, felt a pull to the left, then skidded over into the opposite (north) lane, where she collided with the Pittman automobile; she had no idea of where her car was located in relation to the Volkswagen when it skidded into the north traffic lane; and she estimated her speed at time of impact as 35 mph. There is no competent testimony from which to conclude that the movement of the Drummond vehicle into the northbound lane of traffic was occasioned by any mechanical defect. The deposition of a State Patrolman located the point of impact two feet from the east edge of Blanding Boulevard.
*768 It is appellant's contention that the speed of defendant Drummond's vehicle as it approached the scene of the accident presents a genuine issue upon a controverted material fact. He points to Mrs. Drummond's deposition that her speed was 35 to 40 mph as contrasted with Mr. Pittman's deposition that her speed was 55 to 60 mph. This argument is unsound for the reason that the uncontradicted proofs reflect that irrespective of the speed of the Drummond automobile, defendant Pittman was not guilty of any negligence whatever proximately contributing to the death of Mrs. Sirmons. In so holding we take note of appellant's further contention that since Pittman's automobile left a 60-foot skid mark in a direct path down its lane of traffic, indicating that other than to apply the brakes he took no action to evade the collision, a jury question results as to whether he was negligent in failing to take other action to avoid the accident. We find nothing in the proofs to bring into play the so-called "last clear chance" doctrine which in this case could only be predicated on the theory that defendant Pittman should have anticipated that Mrs. Drummond would drive her vehicle into his lane of traffic and that he thereafter had a reasonable opportunity to avoid the accident and negligently failed to do so. The trial court did not err in entering summary final judgment in favor of defendant Pittman and that judgment is is affirmed.

Re Drummond Judgment
The suit against defendant Drummond was tried before a jury. At the close of all the evidence the court denied motions of the respective parties for directed verdicts. The evidence before the jury reflected substantially the same facts as hereinabove recited in connection with the Pittman case. However, in addition thereto, Mrs. Drummond testified that she did not know of any mechanical defects in her car and that she had not had it repaired, examined or inspected since the accident; that she was in perfect mental and physical condition at the time of the accident; that she did not attempt to lock the brakes of her car; that her car had not skidded before this time; that she had no explanation or idea why it skidded, and that she had no explanation of what happened as her vehicle crossed the center line of the road and into the path of the Pittman automobile. She denied having consciously turned her car to the left and except for feeling a pull or jerk in that direction, could not account for its having traveled to the left. She testified that if her car had continued skidding in the direction she was traveling, she would have run into the rear of the Volkswagen which had come to a stop ahead of her.
Witness Thomas L. Pittman, a brother of defendant Perry H. Pittman, testified that immediately prior to the accident he was driving his car north on Blanding Boulevard ahead of the car driven by defendant Pittman; that as he proceeded through the intersection of Blanding Boulevard and 118th Street he saw defendant Drummond's car coming south in the opposite lane of Blanding Boulevard at a speed which he estimated to be at least 60 mph and realized it would not be able to stop; that he saw the rear end of the Drummond car come up as its brakes were applied, and saw it whip from the south lane into the north lane of traffic where the accident occurred.
Included in the instructions to the jury is the following instruction which was initially requested by the defendant, but appears to have been abandoned by the defendant and given of the court's own motion:
"An unavoidable accident is an occurrence which could not be avoided by that degree of prudence, foresight, and care and caution which the law requires of everyone under the circumstances of the particular case. An accident is said to be unavoidable when not occasioned in any degree, either remotely or directly, by want of such care and skill as the law holds every man bound to exercise.

*769 "No recovery can be had for injuries caused by an accident involving a motor vehicle if the accident was an unavoidable accident or one which could not be prevented by the exercise of ordinary care and prudence.
"If you find, after a consideration of all the evidence, that the collision was caused by an unavoidable accident you should find the defendant not guilty."
The following colloquy occurred in the course of settling the instructions:
"THE COURT: I propose to give number eight. Now, Mr. Stewart [counsel for plaintiff], this is why I took your motion for a directed verdict on liability under advisement. Defendant's requested instruction number eight  an unavoidable accident [quoted above].
"MR. EHRLICH [counsel for defendant]: It is not applicable to his case [the Drummond case].
"THE COURT: Then I must grant his motion for a directed verdict.
"MR. EHRLICH: I didn't ask for it in his case [the Drummond case].
"THE COURT: But he made the motion and unless the charge of unavoidable accident is applicable to his case, as I see it, then I must give him a directed verdict as a matter of law. Now, Mr. Stewart, you don't want to appeal this case any more than anyone else does around here. Do you agree or disagree that an unavoidable accident theory is applicable under these circumstances?
"MR. STEWART: The plaintiff Pittman objects  we want noted, as to the unavoidable accident.
"THE COURT: Let the record show that both plaintiffs vigorously contend that unavoidable accident charge should not be given in either case or at least their respective cases."
[The reference in the above colloquy to "plaintiff Pittman" and in the last statement of the court to "both plaintiffs" is explainable by the fact that Perry H. Pittman also brought a suit against Thelma A. Drummond for damages arising out of the subject accident. His suit was consolidated for trial with the Sirmons suit against Drummond. Shortly after the above colloquy plaintiff Pittman took a voluntary non-suit.]
The jury returned a verdict for defendant Drummond, judgment was entered thereon, and plaintiff appealed.
We pause here to note that appellant's brief herein fails to set up the points involved under a separate division of the brief as contemplated by Florida Appellate Rule 3.7, subd. f, 31 F.S.A., nor does it set up in separate divisions the argument addressed to the respective points of law involved. It is the accepted practice in preparing appellant's brief to numerically set up, in a separate division immediately preceding the section devoted to ARGUMENT, the POINTS OF LAW INVOLVED, specifying in connection with each point the assignments of error from which it is developed and stating the disposition made of the point in the court below, e.g., "The court below answered in the NEGATIVE" or "The court below answered in the AFFIRMATIVE"; and then to take up under separate divisions for each point involved the argument relating thereto. It is helpful, to the pleader as well as the reviewer, to restate the point and the data connected therewith at the commencement of such division of the brief. Appellant's failure to follow this practice has placed on this court the burden of weeding out the issues on appeal by a somewhat tedious analysis of the entire argument contained in the brief, from which we conclude that appellant's grounds for reversal relate entirely to the instructions given to the jury.
*770 While the instructions given on the subject of negligence in its varying degrees are to some extent repetitious, they are basically correct and appropriate to the issues on the trial, so that no material error has been demonstrated in that particular. We are concerned primarily with the above quoted instruction on "unavoidable accident" in its application to the case on review.
As a general proposition, instructions to the jury should clearly and concisely state the issues of fact and the law applicable to the case. The particular instructions to be given in automobile accident cases depend upon the issues developed by the pleadings and supported by the evidence, hence they must be pertinent to the facts developed at the trial. The parties to the trial are entitled to have the issues of fact submitted to the jury without the introduction of extraneous matter that may mislead the jurors or divert their minds from a consideration of the evidence pertinent to the real issues. It follows, as a further general proposition, that the jury should not be charged with abstract rules of law applicable to any case, or with mere statements of law in general terms, even though correct, unless they are made applicable to the issues in the case at bar. As said in Green v. Atlantic Co. (Fla. 1952), 61 So.2d 185, "Charges must square with the rule of law arising from the facts developed at the trial of the case. Derived from any other source they are as apt to mislead as they are to lead the jury aright." Instructions to the jury must be predicated upon facts in proof, and a charge on an issue as to which evidence has not been submitted will constitute error. Bashaw v. Dyke (Fla. App. 1960), 122 So.2d 507; Bessett v. Hackett (Fla. 1953), 66 So.2d 694; Postal Telegraph & Cable Co. v. Doyle, 123 Fla. 659, 167 So. 358; Murden v. Miami Poultry & Egg Co., 113 Fla. 870, 152 So. 714; Seaboard Air Line Ry. v. Royal Palm Soap Co., 80 Fla. 800, 86 So. 835; 32 Fla.Jur., Trial, § 168. Moreover, the jury cannot base inference upon inference in order to arrive at a conclusion of fact. While negligence, as well as the manner in which an accident occurred, may be inferred from known or established facts or circumstances, the ultimate conclusion cannot be conjectured from other inferences. Otherwise stated, an inference recognizable in law cannot be based upon evidence that is so uncertain or speculative as to raise merely a conjecture or possibility. Food Fair Stores, Inc. v. Trusell (Fla. 1961), 131 So.2d 730; Nielsen v. City of Sarasota (Fla. 1960), 117 So.2d 731; Commercial Credit Corporation v. Varn (Fla.App. 1959), 108 So.2d 638; Byers v. Gunn (Fla. 1955), 81 So.2d 723; Voelker v. Combined Ins. Co. of America (Fla. 1954), 73 So.2d 403.
The only evidentiary basis upon which it is suggested that the charge relating to "unavoidable accident" was properly given in this cause rests on defendant Drummond's testimony to the effect that upon applying the brakes of her car she felt a "pull" or "jerk" to the left; but there is no testimony whatever as to the cause of such pull or jerk or that it was of sufficient force to wrest control of the vehicle from the driver. For aught that appears to the contrary the pull or jerk was an incident to the skid of the vehicle, and the skid was produced by causes other than the pull or jerk experienced by the driver. In order, therefore, for the jury to conclude that the death of Mrs. Sirmons  the guest passenger in the Drummond vehicle  resulted from an unavoidable accident, it would have been necessary to indulge the inference that the pull or jerk of the Drummond vehicle to the left was occasioned by an unknown cause over which defendant Drummond had no control, and to indulge the further inference that this resulted in an uncontrollable skid which propelled the Drummond vehicle into the path of the Pittman vehicle, and that the combination of these inferred facts produced an "unavoidable accident" in contemplation of law. Not only is it improper to thus build inference upon inference to reach such conclusions of fact, but other sound principles of law *771 preclude the application of the so-called "unavoidable accident" doctrine in this case.
The principle of law invoking the doctrine of "unavoidable accident" is applicable only when under some theory of the case the injury does not result from negligence of either of the parties. The casualty must be produced by some unavoidable cause. Where the pleadings and evidence authorize a finding that the injury was the result of negligence, it is error to charge the jury upon the doctrine of "unavoidable accident". Harper v. Hall, 76 Ga. App. 441, 46 S.E.2d 201.
In Kelly v. Employers Casualty Co., 202 Okla. 437, 214 P.2d 925, a negligence action, plaintiff sued to recover damages for personal injuries suffered when the car which she was driving was struck in the rear by defendant's truck. The accident occurred on a bridge. Plaintiff had reduced the speed of her car while meeting an approaching car crossing the bridge. Defendant denied negligence and as an affirmative defense alleged unavoidable accident based upon the slowing down of plaintiff's car immediately before the collision. Upon the trial the defendant offered no evidence. Plaintiff appealed from a judgment for defendant entered pursuant to verdict of the jury, assigning error, inter alia, on the court having given an instruction upon "unavoidable accident". In reversing and remanding for a new trial, the appellate court pointed out that since the defendant did not offer any evidence upon which the instruction could be based, it was necessary to rely on the evidence of plaintiff to support the same, and said:
"Negligence is not an element of unavoidable accident but it must be the result of unforeseen circumstances and conditions producing it and which could not have been avoided except by the exercise of exceptional foresight. Eliminating all elements of negligence, the only fact which would demonstrate the unavoidable nature of the collision would be the close proximity of the truck to the rear end of plaintiff's car at the instant she reduced its speed from 35 to 25 miles per hour. There is no such evidence. We think this instruction was not authorized by any fact established by the evidence nor by any reasonable inferences which may be drawn from the facts in evidence."
In Carr v. Boyd, 1951, 123 Colo. 350, 229 P.2d 659, plaintiff Carr charged defendant Boyd with negligence resulting in personal and property damages. The facts as stated in the court's opinion are as follows:
"Plaintiff in his car was traveling west, and defendant east, on an oilpaved mountain highway, thirty feet wide, having only one lane of travel on each side of the center line thereof; the pavement was wet from rain at the time of the accident; and the road was straight, with a down grade toward the east. Defendant, driving east, attempted to pass a line of automobiles going in the same direction. The traffic was heavy, there being a long line of cars both in front of, and behind, defendant. She does not remember looking as far to the east ahead of her as she could see before she turned into the west-bound lane in an effort to pass some automobiles ahead of her. She said that she drove out on the left side of the road and some of the automobiles speeded up; that she could not get back into her line of traffic, and her car started to skid when she became frightened and applied her brakes. She also said that she was traveling about thirty-five miles per hour in order to get around the cars which she intended to pass; that she did not see plaintiff's car until she was out on his side of the highway, and she then realized she was not going to be able to get back in her line of traffic. Her car skidded diagonally and the rear part of it struck the front end of plaintiff's automobile.

*772 "Plaintiff testified as to the damages to his automobile, as to the nature of his injuries and hospitalization and medical expense; and, with reference to the accident, stated that at about five o'clock in the afternoon he was on the way to his home in Idaho Springs from his place of employment at the Chicago and Burlington shop in Denver, and was traveling almost due west, possibly between thirty-five and forty miles an hour; that there was a continuous string of cars going east, some ten or fifteen feet apart, others maybe a little farther; it was drizzling rain and the road surface was wet; there is a slight bend in the road and when he came around the bend to the straight way, he had a clear vision of the road; he saw a car pull out of the lane of traffic into his lane; it was going east and pulled back toward the line of traffic; that evidently it could not get back into it and pulled out again, and that the driver apparently applied the brakes or something because the car went into a skid, and the back end of it hit the front end of his car; the car was skidding and zigzagging across the line of west-bound traffic; if the car had been coming straight down the road, he could have passed, but when it was crosswise he could not; he had put on his brakes and was almost to a stop when the collision occurred; he could not get out of the way on account of the line of traffic on the other side of the road and the narrow shoulder and ditch on the right side.
"No other eyewitness testified as to the accident. An officer of the state highway patrol, who arrived soon after the accident, testified that he found defendant's automobile turned over in the borrow pit on the north side of the road, while plaintiff's car was still on its wheels; that there were skid marks showing that plaintiff's car had been knocked back eight feet by the impact, and there were twelve feet of skid marks made by plaintiff's car just prior to the point of impact; that defendant stated she started to pass other east-bound traffic and was not able to get her car back into the east-bound lane; that she became frightened, applied the brakes, and went into a skid; that there is a ditch to the north of the highway from one to three feet deep."
Defendant filed a general denial. The jury returned a verdict for defendant, judgment was entered thereon, and plaintiff appealed, assigning as error, inter alia, the giving of an instruction on "unavoidable accident". Although plaintiff did not at the trial note an objection to the giving of that instruction, the appellate court held that the interest of a litigant should not always be precluded on a technical inadvertence of counsel. It then proceeded, of its own motion, to adjudicate the question. In reversing and remanding the cause for a new trial on other grounds, the court said:
"* * * since the judgment must be reversed and new trial ordered [on grounds not related to the instruction], we indulge in no further discussion of the other errors specified, namely, that the evidence does not support the verdict of the jury and that an instruction on unavoidable accident was improper, other than to say it is extremely doubtful that if the errors here determined were excluded and a jury properly instructed, that the verdict would have been for the defendant on the evidence as set out herein, since it appears therefrom that defendant, in the exercise of bad judgment in the face of existing conditions, placed herself in an unfortunate position from which she could not extricate herself, all without contributing fault on the part of plaintiff. This being true, there was no place in the case for an instruction on unavoidable accident."
*773 The quoted dicta in Carr v. Boyd, supra, gains force in the case of McBride v. Woods, 1951, 124 Colo. 384, 238 P.2d 183, 29 A.L.R.2d 101, in which plaintiff appealed from a final judgment for defendant entered pursuant to verdict of the jury. The accident there involved occurred at the intersection of College Avenue and Mountain Avenue in Fort Collins, Colorado, where the flow of traffic was regulated by a traffic light in the center. Plaintiff was struck by defendant's automobile as she walked north from the southeast corner of the intersection in the crosswalk across Mountain Avenue. An automobile belonging to defendant had been parked, for some time prior to the accident, in a diagonal position facing the curb line from which plaintiff started to walk across the street. This automobile was parked in the first parking space provided east of the crosswalk, and in order to back out of the space and gain access to Mountain Avenue it was necessary for defendant to project the rear portion of his automobile into the crosswalk in question. Defendant backed his car out of this parking space and in so doing bumped into plaintiff throwing her to the pavement in the crosswalk, resulting in a broken hip and long hospitalization, together with doctor bills and nursing care incident thereto. Defendant denied negligence and alleged, inter alia, that plaintiff's injuries and damage were proximately caused by an unavoidable accident. Appellant's assignment of error presented the following question for determination:
"Where the driver of an automobile, in broad daylight, backs the same from a diagonally parked position at the curb into a pedestrian on the crosswalk at a street intersection, and strikes the latter who is crossing said intersection and walking away from the curb at which said car was parked; where no warning was sounded; and where the pedestrian did not see the car, and the driver did not see the pedestrian; should the question of `unavoidable accident' be submitted to the jury?"
The challenged instruction was as follows:
"The Court instructs the jury that if you believe from the evidence that neither plaintiff nor defendant was guilty of negligence, as defined in these instructions, but that the injury sustained by the plaintiff was the result of an unavoidable accident, then the jury should find for the defendant."
In supporting that instruction the defendant argued that the accident was unavoidable because, according to the evidence, there was a space in the back of the body of the automobile between the rear window and the window on the right rear side which was composed of a solid substance, and that since plaintiff in walking forward, and defendant in moving backward, were moving toward the point of impact, plaintiff could easily have been at all times obscured from view by that portion of defendant's car through which he could not see; and, assuming this to be true, there would be no showing of negligence on his part; and further assuming that plaintiff was free from negligence, the mishap would become an "unavoidable accident". In disagreeing with this contention the Colorado court cited authorities to the effect that the acts attributed to the defendant driver of the automobile were such as to afford a proper basis for the jury to determine that he was guilty of negligence, and then said:
"In Iacino v. Brown, 121 Colo. 450, 451, 217 P.2d 266, 268, we approved an instruction which defined an `unavoidable accident' as, `such an occurrence, as under all the circumstances, could not have been foreseen, anticipated, or avoided in the exercise of ordinary care'. In Carr v. Boyd, 123 Colo. 350, 229 P.2d 659, we clearly indicated that the giving of an instruction on `unavoidable accident' in a case in which there was no evidence *774 upon which a finding of such an accident could properly be based, is reversible error. `An instruction which submits to the jury a question not in the case is erroneous.' Reynolds v. Hart, 42 Colo. 150, 94 P. 14, 15.
"It follows, therefore, that from the facts and circumstances surrounding this case, no showing whatever was made justifying the submission of the question of unavoidable accident to the jury."
The great weight of authority, with which we agree, is that an instruction upon the subject of "unavoidable accident" is improper and tends to mislead and confuse the jury unless there is sufficient evidence to make at least a prima facie case that the casualty in question was in fact the result of an unavoidable accident; an accident resulting from circumstances affording a reasonable basis on which to conclude that neither party was guilty of actionable negligence. A party is not entitled to an instruction on the theory of an unavoidable accident in the absence of any evidence on which to base it, or upon pleadings not raising the issue, such as where both parties charge negligence in their pleadings. Blashfield, Cyclopedia of Automobile Law and Practice, Vol. 10C, § 6698, p. 121.
The phrase "unavoidable accident", as related to the question of liability in tort actions involving damages to person or property, is somewhat of a misnomer. When a casualty occurs as a result of matters beyond the knowledge, actual or implied, of the person charged, and over which he has no control, he is relieved of liability for the simple reason that he is not guilty of actionable negligence; otherwise stated, the element of proximate cause is lacking because there is no causal connection between his acts and the damages sustained. As said in Bailey v. Woodrum Truck Lines, Tex.Civ.App., 36 S.W.2d 1090, 1093, affirmed Com.App., 57 S.W.2d 92.
"`Unavoidable accident' is a legal phrase applicable to different situations, and when used in the court's instructions to a jury it becomes necessary to give further instructions in order that it may be properly applied in determining the issues of fact involving that defense. Hence we fail to perceive the necessity of using the term `unavoidable accident' in submitting that defense to a jury; it being the duty of the court to submit to the jury separately a fact or group of facts upon which a finding may be made which will show a right of recovery on the part of the plaintiff or a defense to that right on the part of the defendant."
In some jurisdictions the party relying on such defense must affirmatively plead it. Whatever the desirability of such a rule, it has not been promulgated in this state.
As clearly implied by the trial judge in the course of the conference settling the instructions in this cause, the only theory upon which he denied plaintiff's motion for a directed verdict was that there existed competent material evidence from which the jury might conclude that Mrs. Sirmons met her death as the result of an "unavoidable accident" (see the above quoted colloquy). As we have said, however, the evidence is insufficient to support that premise. Where the operator of an automobile, through his negligence, has produced a situation of danger, he cannot avoid liability for the resulting accident on the ground that after the situation had arisen the accident was unavoidable, or that he did all he could, or all that could be expected of him, to avoid it; nor is a collision unavoidable, so as to relieve a motorist of liability, if he was guilty of negligence proximately contributing to the collision. 60 C.J.S. Motor Vehicles § 256, p. 623. The conclusion is therefore inescapable that giving the instruction in question was prejudicial error *775 in that it tended to mislead and confuse the jury.
The final judgment in favor of defendant Drummond is reversed and the cause remanded for a new trial.
CARROLL, DONALD K., Chief Judge, and WIGGINTON, J., concur.