2012 CO 32

**In re Donald Francis SMITH, Plaintiff**

v.

**Michael D. JEPPSEN, Defendant**

and

**State Farm Mutual Automobile Insurance, Intervenor.**

No. 11SA51.

Supreme Court of Colorado, En Banc.

April 30, 2012.

Rehearing Denied May 29, 2012.

Thomas J. Tomazin, P.C., Thomas J. Tomazin, Greenwood Village, Colorado, Attorneys for Plaintiff.

Patterson, Nuss & Seymour, P.C., Franklin D. Patterson, Brian D. Kennedy, Greenwood Village, Colorado, Attorneys for Defendant.

Seaman & Chambers, P.C., Thomas J. Seaman, Karl A. Chambers, Greenwood Village, Colorado, Attorneys for Intervenor.

The Viorst Law Offices, P.C., Anthony Viorst, Denver, Colorado, Attorneys for Amicus Curiae Colorado Trial Lawyers Association.

Justice RICE delivered the Opinion of the Court.

¶ 1 In this original proceeding under C.A.R. 21, we determine whether section 10–1–135, C.R.S. (2011), applies prospectively to this action and precludes admission of evidence of the amounts paid by the plaintiff's insurance company pursuant to the plaintiff's medical expense coverage. We hold that the trial court was correct in applying section 10–1–135 here because the statute pertains to cases pending recovery as of August 11, 2010. Further, we hold that the trial court correctly excluded from evidence the amount of the insurance company's payments because section 10–1–135(10)(a) codifies the common law pre-verdict evidentiary component of the collateral source rule and unambiguously requires the exclusion. Therefore, we discharge the rule to show cause.

## I. Facts and Procedural History

¶ 2 This original proceeding regarding the admissibility of evidence of the amounts paid by a collateral source arises out of the negligence action plaintiff Donald Francis Smith filed against defendant Michael D. Jeppsen after Smith and Jeppsen were involved in an automobile accident. Smith sought to recover, among other damages, the cost of past and future medical expenses resulting from the crash. Jeppsen admitted liability, and the parties agreed that the proper measure of Smith's medical expense damages should be the necessary and reasonable value of the medical services rendered. The parties disagreed, however, as to whether the trial court, in determining reasonable value, could consider evidence of the amounts billed to and paid by a collateral source: Smith's insurance company.

¶ 3 Both parties filed motions with the trial court regarding the admissibility of evidence of the amounts paid by Smith's insurer. The trial court ruled on November 25, 2009, that the parties could submit relevant evidence of both the amount *billed* by the healthcare providers for the medical services, and the amount *paid* by Smith's insurer for those services.

¶ 4 On January 28, 2010, Smith petitioned this Court for a rule to show cause pursuant to C.A.R. 21 to preclude enforcement of the trial court's November 25, 2009 order. Specifically, Smith requested that this Court vacate the portion of the order ruling that the parties could present evidence of the amounts *paid* by his insurer. We first issued the rule, but later discharged it as improvidently granted and instructed the trial court to consider the effect, if any, of section 10–1–135, effective as of August 11, 2010, on the admissibility of the "amounts paid" evidence.

¶ 5 After additional briefing regarding the impact of section 10–1–135, the trial court ruled on January 18, 2011, that subsection 10–1–135(10)(a) bars the admission of any evidence of collateral source payments, discounts, and write-offs—including evidence of the amounts paid by Smith's insurance company. Jeppsen and his insurer, State Farm Mutual Automobile Insurance Company (collectively "Petitioners"), then filed the C.A.R.

21 petition underlying this opinion. Petitioners requested that this Court vacate the trial court's January 18, 2011 order holding that subsection 10–1–135(10)(a) applies prospectively and precludes admission of evidence regarding the actual amounts paid for Smith's medical treatments. We issued a rule to show cause and now discharge the rule.

## II. Jurisdiction and Standard of Review

¶ 6 C.A.R. 21 authorizes this Court to exercise its original jurisdiction and review an interlocutory order of the trial court for an abuse of discretion when appellate review of the order would be inadequate. C.A.R. 21(a)(1); *Hall v. Levine*, 104 P.3d 222, 224 (Colo.2005). Exercise of this original jurisdiction is within our sole discretion. C.A.R. 21(a)(1). We generally elect to hear C.A.R. 21 cases that raise issues of first impression and that are of significant public importance. *Stamp v. Vail Corp.*, 172 P.3d 437, 440 (Colo. 2007) (citing *Wesp v. Everson*, 33 P.3d 191, 194 (Colo.2001)). We have previously exercised our original jurisdiction to review questions of statutory interpretation. *Id.; see also, e.g., Bd. of Cnty. Comm'rs v. PUC*, 157 P.3d 1083, 1085–86 (Colo.2007).

¶ 7 The trial court issued an interlocutory order applying section 10–1–135 and excluding from evidence the amount paid by Smith's insurer pursuant to Smith's medical expense coverage. This case raises an issue of first impression and of public importance because this Court has yet to interpret section 10–1–135 with respect to the statute's bearing on the admissibility of collateral source evidence. Thus, review of the trial court's interlocutory order under C.A.R. 21 for an abuse of discretion is appropriate.

## III. Applicability of Section 10–1–135

¶ 8 Section 10–1–135 applies prospectively here because recovery in the underlying case was pending as of the effective date of the statute. Additionally, although the bulk of section 10–1–135 addresses post-verdict subrogation, the plain language of subsection 10–1–135(10)(a) indicates that the subsection applies to pre-verdict evidence

submissions. As such, we hold that the trial court did not abuse its discretion when it applied subsection 10–1–135(10)(a).

### A. Prospective Application of Section 10–1–135

¶ 9 Petitioners argue that the trial court improperly applied section 10–1–135 retroactively to this 2008 case because Smith's negligence claim accrued, and Smith's insurer paid the medical expenses resulting from the accident, prior to the statute's August 11, 2010 effective date. We disagree.

¶ 10 A statute is presumed to operate prospectively absent clear legislative intent that it apply retroactively. § 2–4–202, C.R.S. (2011); *Ficarra v. Dep't of Regulatory Agencies,* 849 P.2d 6, 14 (Colo.1993). This means that a statute applies to transactions that take place after the section's effective date unless the legislature clearly intends otherwise. *In re Estate of DeWitt,* 54 P.3d 849, 854 (Colo.2002).

¶ 11 The "transaction" to which section 10–1–135 pertains is a *"recovery* made on or after the applicable effective date" of the act. Ch. 164, sec. 2 ¶ 2, § 10–1–135, 2010 Colo. Sess. Laws 575, 580 (emphasis added); *see also,* ¶ 1 (effective date of section 10–1–135 is August 11, 2010). Thus, section 10–1–135 will apply to this action if recovery was pending as of August 11, 2010. The legislature defines "recovery" for the purposes of section 10–1–135 as "a monetary award from a third party through either settlement or judgment to compensate an injured party for bodily injury sustained as a result of an act or omission of the third party." § 10–1–135(2)(d). Recovery has yet to occur in this case because the parties have not settled, nor has the trial court issued a final judgment. As such, section 10–1–135 applies to this action because recovery remains pending.

¶ 12 The trial court did not improperly apply section 10–1–135 retroactively because the statute's applicability does not hinge on the dates of transactions such as the accrual of claims or the payment of medical expenses. *See* ch. 164, sec. 2, § 10–1–135, 2010 Colo. Sess. Laws 575, 580. Rather, the statute applies to cases resulting in recoveries occurring after August 11, 2010. *Id.* Because the relevant transaction—recovery—was pending as of the effective date of the statute, the trial court did not abuse its discretion by applying section 10–1–135.

### B. Subsection 10–1–135(10)(a) Applies Pre–Verdict

■ ¶ 13 Petitioners argue that section 10–1–135 does not address the pre-verdict calculation of the reasonable value of medical expenses, or the admissibility of evidence on that issue. Instead, Petitioners claim, the statute only applies to post-verdict procedures because it limits the rights of a subrogated health insurance company to be repaid from settlement or judgment proceeds that the insured has already recovered from a tort defendant. Again, we disagree.

■ ¶ 14 "When interpreting a statute, we strive to give effect to the legislative purposes by adopting an interpretation that best effectuates those purposes." *Smith v. Exec. Custom Homes, Inc.,* 230 P.3d 1186, 1189 (Colo.2010). "In order to ascertain the legislative intent, we look first to the plain language of the statute, giving the language its commonly accepted and understood meaning." *Id.* (citations omitted). When the language of the statute is clear and unambiguous, the statute must be applied as written. *Van Waters & Rogers, Inc. v. Keelan,* 840 P.2d 1070, 1076 (Colo.1992).

¶ 15 Section 10–1–135 contains ten subsections, most of which expressly concern postjudgment subrogation. *See, e.g.,* § 10–1–135(3)(a)(I) ("Reimbursement or subrogation pursuant to a provision in an insurance policy . . . is permitted only if the injured party has first been fully compensated for all damages arising out of the claim."). The plain language of subsection 10–1–135(10)(a), however, is not limited to post-judgment situations. It states in the relevant part:

> The fact or amount of any collateral source payment or benefits shall not be admitted as evidence in *any action* against an alleged third-party tortfeasor or in an action to recover benefits under [the uninsured motorist coverage statute].

§ 10–1–135(10)(a) (emphasis added).

¶ 16 The plain meaning of the phrase "any action" includes this ongoing case because

the term "any" is comprehensive enough to encompass both pre- and post-verdict proceedings. We therefore conclude that the trial court did not abuse its discretion when it applied subsection 10–1–135(10)(a) pre-verdict.

## C. Section 10–1–135(10)(a) Codifies the Common Law Pre–Verdict Component of the Collateral Source Rule

¶ 17 In addition, the trial court also properly applied subsection 10–1–135(10)(a) pre-verdict because the subsection codifies the common law pre-verdict evidentiary component of the collateral source rule. At common law, trial courts were required to exclude from evidence at trial the amounts paid by a collateral source to cover a plaintiff's medical bills. *See Wal–Mart Stores, Inc. v. Crossgrove,* 2012 CO 31, ¶ 12, 276 P.3d 562 (released concurrently with this opinion); *see also, Volunteers of Am. v. Gardenswartz,* 242 P.3d 1080, 1083–84 (Colo.2010); *Moyer v. Merrick,* 155 Colo. 73, 80, 392 P.2d 653, 656–57 (1964) (since money received from a pension plan to which an employee had contributed was within the collateral source rule, evidence of receipt by plaintiff of pension benefits in an action for damages resulting from the defendant's negligence was inadmissible); *Carr v. Boyd,* 123 Colo. 350, 356–57, 229 P.2d 659, 663 (1951) ("Benefits received by the plaintiff from a source other than the defendant and to which he has not contributed are not to be considered in assessing the damages.").

¶ 18 This pre-verdict evidentiary exclusion prevented the fact finder from improperly reducing the plaintiff's damages award on the grounds that the plaintiff already recovered his loss from the collateral source. *Crossgrove,* 2012 CO 31, ¶ 12, 276 P.3d 562. As the United States Supreme Court reasoned in *Eichel v. New York Central Railroad Co.,* 375 U.S. 253, 254–55, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963), evidence of a plaintiff's receipt of collateral source benefits is not only "inadmissible to … mitigate damages," but also "involves a substantial likelihood of prejudicial impact" if admitted for other purposes because "evidence of collateral benefits is readily subject to misuse by a jury." Thus, Colorado's common law collateral source rule completely barred the pre-verdict admission of collateral source evidence. *Carr,* 123 Colo. at 359, 229 P.2d at 664; *see Eichel,* 375 U.S. at 254–55, 84 S.Ct. 316; *see also* CRE 403 (requiring exclusion of evidence, even if relevant, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury").

¶ 19 Subsection 10–1–135(10)(a) unambiguously codifies this pre-verdict common law principle by excluding from evidence "[t]he fact or amount of any collateral source payment or benefits." Thus, the trial court properly applied the subsection pre-verdict in a manner consistent with the common law rule.

## IV. Excluding Evidence of Collateral Source Payments Pursuant to Subsection 10–1–135(10)(a)

¶ 20 Subsection 10–1–135(10)(a) excludes evidence of the amounts paid by Smith's insurance company for medical expenses. As previously noted, we first give the plain language of a statute its commonly accepted and understood meaning when ascertaining legislative intent. *Smith,* 230 P.3d at 1189; *see also Van Waters,* 840 P.2d at 1076. The statute must be applied as written when its language is clear and unambiguous. *Van Waters,* 840 P.2d at 1076.

¶ 21 Subsection 10–1–135(10)(a) clearly and unambiguously states that "the fact or amount of any collateral source payment or benefits *shall not be admitted as evidence* in any action against an alleged third-party tortfeasor." (emphasis added). A collateral source is a person or company, wholly independent of an alleged tortfeasor, that compensates an injured party for that person's injuries. *Van Waters,* 840 P.2d at 1074; *see* § 13–21–111.6, C.R.S. (2011) (Colorado's post-verdict collateral source statute). Smith's insurance company is a collateral source because it is wholly independent of Jeppsen, and it paid for Smith's medical expenses after the accident.

¶ 22 Smith filed a negligence action, sounding in tort, against Jeppsen. Jeppsen was

therefore an "alleged tortfeasor" for the purposes of this case. Thus, this action falls into the category of "any action against an alleged tortfeasor." As such, subsection 10–1–135(10)(a) excludes evidence of the payment made by a collateral source—Smith's insurer—from this action against Jeppsen—an alleged tortfeasor. The trial court therefore did not abuse its discretion by excluding evidence of the amounts paid by Smith's insurance company.

## V. Conclusion

¶ 23 We conclude that the trial court did not abuse its discretion when it applied section 10–1–135 to this action and also did not abuse its discretion when it excluded evidence of the amount Smith's insurer paid for his medical expenses from the reasonable value calculation.

¶ 24 Section 10–1–135 applies prospectively here because Smith's recovery remains pending. In addition, subsection 10–1–135(10)(a) applies pre-verdict because the plain language of the provision encompasses both pre- and post-judgment actions. Finally, subsection 10–1–135(10)(a) plainly and unambiguously reflects the legislature's intent to codify the pre-verdict evidentiary component of the common law collateral source rule and exclude evidence of collateral source payments—such as the amount paid by Smith's insurer—from actions against an alleged tortfeasor.

¶ 25 We therefore discharge the rule to show cause.

Justice EID dissents, and Justice COATS and Justice BOATRIGHT join in the dissent.

Justice EID, dissenting.

¶ 26 Today the majority holds not only that the collateral source doctrine prevents a jury, when considering the reasonable value of medical services, from hearing the fact that the medical provider accepted less than the amount billed for the services, see Wal-Mart v. Crossgrove, 2012 CO 31, 276 P.3d 562, but the legislature actually adopted that position two years ago in section 10–1–135(10)(a). Maj. op. at ¶ 24. This scenario is highly unlikely first and foremost because it

attributes incredible clairvoyance to the legislature. Moreover, it runs afoul of the operative language of section 10–1–135, which addresses only post-verdict reimbursement. For these reasons, I respectfully dissent from the majority's opinion.

¶ 27 There is no question that section 10–1–135, on its face, is aimed at changing the way in which post-verdict reimbursement claims may be brought by insurers who have paid benefits to insureds. See, e.g., maj. op. at ¶ 8 (noting that the "bulk" of section 10–1–135 addresses such claims); id. at ¶ 15 (same). Indeed, the statute itself declares that it is designed to address the problem of "payers of benefits … seek[ing] repayment of benefits out of a recovery obtained by the injured party without paying attorney fees incurred by the injured party in obtaining the recovery." § 10–1–135(e); see also § 10–1–135(f) (requiring such payment). The statute's title—"Reimbursement for benefits—limitations—notice—definitions—legislative declaration"—reinforces this focus, as do the repeated references to "recovery." See, e.g., 10–1–135(3)(d)(I), (II), (III), (4)(b).

¶ 28 In fact, the effective date provision upon which the majority relies for its "prospectivity" determination, maj. op. at ¶ 11, makes clear that the statute addresses only "recoveries." See Ch. 164, sec. 2(2), 2010 Colo. Sess. Laws 575, 580 (providing that section 10–1–135 applies to a *"recovery* made on or after the applicable effective date of the act" (emphasis added); see also § 10–1–135(2)(d) (defining "recovery" as "recovery of a monetary award … either through settlement or judgment"). It would make no sense for the legislature to make a substantial change in pre-verdict evidentiary rules—as the majority would have it—and then not apply that change to the pre-verdict stage of the proceedings. Put differently, under the majority's interpretation, the legislature made a substantial change in the trial practice in a statute that, by its very terms, does not apply to trials.

¶ 29 The majority glosses over this problem by suggesting that the statute applies to cases that have been filed but where no recovery has yet been reached. See, e.g., maj. op. at ¶ 1 (statute applies to "cases

pending recovery" as of effective date); *id.* at ¶ 11 (same); *id.* at ¶ 12 (same); *see also id.* at ¶ 11 (statute applies here because case was filed before effective date and "[r]ecovery has yet to occur"); *id.* at ¶ 24 (same). This interpretation suggests that the legislature changed post-verdict procedures even where a recovery has not occurred (and may never occur). If the majority were correct that the legislature intended to preclude juries from hearing the fact that a medical provider accepted an amount less than the amount billed, it would have made the section applicable to "actions" filed on or before a certain date, as the majority's gloss on the statutory language suggests. But again, the statutory language refers to recoveries, not actions.

¶ 30 Read in this context, section 10–1–135(10)(a) is simply a "savings clause" that preserves the status quo in other areas of the law not impacted by the changes the legislature made with regard to post-verdict reimbursement claims by insurers. The provision begins with "[n]othing in this [statute] modifies," and then lists a number of areas that are not modified.[1] The entirety of the section thus indicates that there has been no change made in the listed areas. First, the legislature indicates that it has not modified "[t]he requirement of section 13–21–111.6, C.R.S., regarding the reduction of damages based on amounts paid for the damages from a collateral source." Nor has it modified the area listed in the second sentence of section (a)—the collateral source rule—as "[t]he fact or amount of any collateral source payment or benefits shall not be admitted as evidence in any action against an alleged third-party tortfeasor or in an action to recover [uninsured motorist] benefits." Here, the legislature restated the collateral source doctrine, namely, that "[b]enefits received by the plaintiff from a source other than the defendant and to which he has not contributed are not to be considered in assessing the damages." *Carr v. Boyd,* 123 Colo. 350, 356–57, 229 P.2d 659, 663 (1951). Finally, the section preserves the procedures in place for hospital liens and workers' compensation. § 10–1–135(b), (c).

¶ 31 Contrary to this context, the majority's interpretation suggests that the legislature made a major change in trial practice in a section that expressly states that it is making no change at all. Indeed, there is no indication from the language that the statute modified the long-standing rule that juries should consider what a medical provider accepted as payment. for medical services in determining the reasonable value of those services. *See Crossgrove,* 2012 CO 31, ¶¶ 28–29, 276 P.3d 562 (Eid, J., dissenting) (discussing the rule). Nor does it suggest that the legislature resolved the so-called "tension" between that rule and the collateral source doctrine in favor of exclusion of the fact that a medical provider accepted less than what was billed. *See Wal–Mart v. Crossgrove,* 2012 CO 31, ¶ 36, 276 P.3d 562 (Eid, J., dissenting). The legislature simply indicated that no change was made in the collateral source doctrine itself.

¶ 32 As such, I would reject any suggestion in the majority opinion that the legislature has actually addressed, let alone resolved, the issue presented in this case—that is, whether the collateral source doctrine bars introduction of the fact that a medical provider accepted an amount less than what was billed—although it certainly may do so in the future. Because I do not believe the collateral source doctrine bars introduction of such a fact, *see Crossgrove,* 2012 CO 31, 276 P.3d 562 (Eid, J., dissenting), I respectfully dissent from the majority's opinion.

---

1. Section 10–1–135(10) provides:
   (10) Nothing in this section modifies:
   (a) The requirement of section 13–21–111.6, C.R.S., regarding the reduction of damages based on amounts paid for the damages from a collateral source. The fact or amount of any collateral source payment or benefits shall not be admitted as evidence in any action against an alleged third-party tortfeasor or in an action to recover benefits under section 10–4–609.
   (b) Lien rights of hospitals pursuant to section 38–27–101, C.R.S., or of the department of health care policy and financing pursuant to section 25. 5–4–301(5), C.R.S.; or
   (c) Subrogation and lien rights granted to workers' compensation carriers or self-insured employers pursuant to section 8–41–203, C.R.S.

I am authorized to state that **Justice COATS** and **Justice BOATRIGHT** join in the dissent.