## QUIMBY ET AL. v. BOYD ET AL.

1. Under section 75 of the Code of Procedure every material allegation of an answer not controverted by a replication shall be taken as true, and the defendant may become entitled to judgment on his answer. But the right may be waived by the defendant going to trial as if the issues were properly made up.

2. The rule governing motions of the character of motions for nonsuit is, that the precise ground of the motion must be stated; the party should lay his finger on the point of his objection.

3. A motion for judgment *non obstante veredicto* is not a proper motion to be interposed by a defendant, and when interposed should not be entertained. The proper motion for the defendant, when the verdict is for the plantiff, is in arrest of judgment.

4. Objections to the form of a verdict cannot be raised for the first time in this court.

5. The requirement under section 2324 of the United States statutes, that the record of a mining claim shall contain such a description by reference to some "natural object" as will identify the claim, admits a tree as a fixed natural object; it should be marked so as to be readily identified, unless it possesses peculiarities so different from other trees in general, that a description thereof is sufficient to identify it.

6. It is not necessary that a location certificate of a mining claim should state the distance from the discovery shaft to the side lines.

7. It is a rule that where a deed or other instrument is susceptible of two constructions, one of which the law would carry into effect, while the other would be in contravention of some legal principle or statutory provision, the parties will always be presumed to have intended the former.

8. A man who acts in a public office is presumed to have been rightfully appointed thereto. The issuing of a commission is the final act which evidences the fact that all necessary steps have been taken to perfect the appointment to office.
9. Courts will not presume that the law-making power intended to require an impossibility.
10. The amount paid on annual labor is not conclusive that work of that value has been done on a mining claim. but the actual value thereof is the true test whether or not the law has been complied with. When the testimony is conflicting as to the value, it is proper to consider whether there has been a *bona fide* attempt to comply with the law.

*Appeal from District Court of El Paso County.*

THE facts are sufficiently stated in the opinion.

Mr. W. J. SHARMAN, for appellants.

MARKHAM, PATTERSON and THOMAS, for appellees.

BECK, C. J.   The first question demanding our consideration is whether the appellants, who were defendants below, were entitled to judgment, notwithstanding the submission of the cause, without objection from them, to a jury for trial, and a verdict in favor of plaintiffs, for the reason that the new matter set up in their answer to the complaint was not put in issue by a replication.

Under section 75 of the Code of Civil Procedure, Comp. 1883, the defendants were entitled to have every material allegation of their answer taken as true, since no replication was filed thereto.

But counsel for plaintiffs contend that this right was waived by the defendants, by their failure, at any stage of the trial, to call the attention of the court to the fact that no replication had been filed, and by their attempt to prove the affirmative allegations of the answer, just as if the same had been controverted by a replication.

The truth of the above proposition is denied by counsel for defendants, who affirm that they sought to take advantage of the condition of the pleadings at every stage

of the trial. They indignantly repel the insinuation that they themselves overlooked the fact that no replication had been filed, and that they are now raising this specific objection for the first time in this court. As proof to the contrary, they refer us to their motion for non-suit entered at the close of plaintiffs' direct testimony; their instructions asked and refused; their motion for judgment notwithstanding the verdict, and their motion for new trial.

There can be no question that the answer contained new matter, which the defendants were entitled to have taken as true, if not traversed by a replication. The complaint charged them with an illegal entry upon the Paymaster lode mining claim, the property of the plaintiffs, and of an unlawful appropriation thereof. The answer denied these allegations, and stated affirmatively that the premises in question had long been abandoned and forfeited by failure of the plaintiffs to perform the necessary annual labor required by law, and that at the time of the entry of the defendants the premises comprised a portion of the unoccupied public domain, and were subject to relocation. The answer also alleges a valid relocation thereof by the defendants, under the name of the Monticello lode.

In this state of the pleadings, unless the omission to file a replication was capable of being waived, and was waived, there was no issue for a jury to try, and the result of the trial must be regarded as of no legal significance whatever. The defendants were entitled to judgment upon their answer, as held by Judge Hallett in *Newman v. Newton*, 3 Colo. L. R. 193. No such judgment was asked, however, but the defendants went to trial just as if the issues were properly made up. We will say further, in this connection, that a critical examination of the entire record leads inevitably to one of two conclusions, to wit: that the fact that no replication had been filed to the answer must have been overlooked by

defendants' counsel, or that they must have sought to take advantage of the default without calling the attention of the court and of the ·opposite counsel to this specific fact. Otherwise why was not a motion for judgment upon the pleadings interposed in the first instance, instead of voluntarily going into trial upon the merits? Why was not the specific defect now relied upon pointed out in the motion for non-suit, the motion for judgment notwithstanding the verdict, or the motion for a new trial? And why was not this defect in the pleadings alluded to in the instructions asked for the defendants?

That some of the motions so interposed were broad enough to include the defect in the pleadings is not sufficient. The pleadings are not specifically mentioned in any of them, and the only allusion made to the pleadings during the whole course of the trial, so far as we are advised, and this an indefinite allusion, was made by way of objection on part of the defendants to producing evidence in defense upon the overruling of the motion for non-suit. The only information given about this objection is that it was " *to the sufficiency of the pleadings and proofs of the plaintiffs.*" What the defect was does not seem to have been mentioned.

The only ground assigned in the motion for non-suit is " for the reason that there is no sufficient evidence to entitle the plaintiffs to recover."

The rule governing motions of this character is, that the precise ground of the motion must be stated. As said in *Kiler v. Kimbal*, 10 Cal. 268, the party should lay his finger on the point of his objection; or, as expressed in *People v. Barnard*, 27 Cal. 474, when a non-suit is moved at the trial, the attention of the court and of the opposite counsel should be particularly directed to the supposed defects in the plaintiff's case. Defendants having elected to rest this motion on the ground of insufficiency of evidence, are now estopped to say that it

should have been sustained on the ground of a defect in the pleadings.

The two instructions prayed on part of the defendants were based, one on supposed defects in plaintiffs' location certificate, the other upon insufficiency of their evidence to sustain a verdict. No effort to take advantage of the state of the pleadings is discernible here.

Of the eight grounds assigned in the motion for a new trial, but one could have reference to the point now insisted upon, viz.: "Because of error in law, occurring at the trial and excepted to at the time by the said defendants." The allegation that the error was excepted to shows that it did not relate to a defect in the pleadings, for no ruling appears to have been made or asked concerning the pleadings, and for the same reason no exception was saved to any alleged error of law involving the sufficiency of the pleadings.

The grounds assigned in the motion for judgment notwithstanding the verdict are, "for the reason that upon the record plaintiffs are not entitled to recover, and second, for the reason that the plaintiffs failed to prove a sufficient case for the jury."

No error was committed in denying this motion. It cannot be said to have been based on defects in the pleadings because they are not mentioned. It, therefore, assumes to be the usual motion for judgment *non obstante veredicto*, but this is not a proper motion to be interposed by a defendant, and the courts say that when so interposed it should not be entertained. In *Bradshaw v. Hedge*, 10 Iowa, 402, the court say: "A motion *non obstante veredicto* was only entertained by the courts under the former system of pleadings and practice, under a certain state of pleadings and findings by the jury, as when the defendant admitted the material allegations in the plaintiff's declaration, but joined issue upon some immaterial averment, which was found by the jury for the defendant. It appears, however, that the courts have

never entertained such motion when made by the defendant."

This case holds, and the decision is supported by authorities therein cited, that the proper motion for a defendant, when the verdict is for the plaintiff, is in arrest of judgment.

It is apparent from an inspection of this record that the defendants proceeded in all respects just as they would have done if the issues had been regularly formed. By introducing evidence to prove the affirmative allegations of their answer, they treated them as controverted and put in issue, and it is now too late to raise the specific point, for the first time, that there was no issue to try. The objection has clearly been waived. In support of this conclusion we cite the following adjudications:

In *McAllister v. Howell*, 42 Ind. 16, the court say: "There was no replication filed to the answer. But it has been held in numerous cases that an affirmative answer, where the cause has been tried without a replication, will be deemed to have been controverted on the trial in the same manner as if a replication in denial had been filed."

In *Hopkins v. Cothran*, 17 Kan. 178, the same view is taken. The language of the court is: "Now, it is true that said amended answer was not replied to, but still the case was tried in every respect the same as it would have been tried if a reply had been filed to the amended answer, and, therefore, we think the defendants waived a reply. * * * The attention of the court below was at no time specifically called to the fact that no reply had been filed to the amended answer."

In California a father sued a railroad company to recover damages for the death of his son, alleged to have been caused by the negligence of the defendant. A written release of all demand for damages was pleaded in bar. In such case it was necessary to deny the allegation by affidavit, in order to put it in issue, which was

not done.   But the plaintiff introduced evidence, without objection, to show that at the time he executed the release, he was incompetent to contract, and the case was tried as if the execution of the release had been denied. The plaintiff recovered, and upon error assigned in the supreme court that the verdict and judgment were unauthorized, there being no issue for the jury to try, it was held that the defendant, having permitted the case to proceed as if an issue had been joined on the execution of the release, would not be allowed to take advantage of the admission in the pleadings.  *Crowley v. City R. R. Co.* 60 Cal. 628.

The objection urged in this court for the first time, to the form of the verdict, is equally without merit.   The objection is as follows: "It was error to find a general verdict in favor of the plaintiffs against all of the defendants for the whole of the premises."   No such objection was made below, and no such objection is assigned for error.   If the irregularity complained of, in fact fact existed, which it does not, the appellants would not be entitled to a reversal of the judgment upon that account.   *D. S. P. & P. R'y Co. v. Woodward*, 4 Colo. 1.

The verdict returned by the jury was: "We, the jury, find for the plaintiffs and that they are entitled to the possession of the premises in controversy, and we further find that the work done in 1880 was worth $100."

Three persons are named in the complaint and process as defendants, Quimby, Boon and Welch, but only two were served with process, Quimby and Boon, and they only appeared and defended the action.   The charge made, that the verdict is against all of the defendants, cannot be sustained.   There is not a word in it, as set out in the transcript of the record, that can be construed to include a defendant not served with process and not appearing to the action.   The form of the verdict was correct.   The parties defending were holding the entire premises from the possession of the plaintiffs, and as

against them the plaintiffs, if entitled to recover at all, were entitled to recover the premises generally. Besides, the appellants are in no manner prejudiced by the supposed irregularity. If the verdict could be construed to include the defendant Welch, since he is not a party to this appeal, an error prejudicial to him is not available to the appellants. *De Lappe v. Sullivan*, 7 Colo. 182; *Chapman v. Pocock*, 7 Colo. 204.

Error is assigned to the admission in evidence of the location certificate of the Paymaster lode, the objection being that it did not contain sufficient reference to natural objects and permanent monuments to identify the claim.

The location certificate states that the claim is situated on the crest of Limestone mountain, about three-quarters of a mile south from the Arkansas river; that the Ben Bolt lode adjoins the claim on the east, corners four and three of the former being coincident, respectively, with corners one and two of this claim. The bearing of the summit of Banana mountain therefrom is given, and corner number one is also tied to a tree, as follows: " From corner number one a double spruce tree, fourteen inches in diameter, bears north fifteen degrees east, four feet."

The principal objection urged is to the spruce tree, and a letter from the commissioner of the general land office is cited, to the effect that a tree should not be considered a permanent natural object as an initial point of a mining claim. Sickel's Mining L. & D. 118.

Mr. Wade, in his American Mining Law, page 113, in treating of the requirements of section 2324, United States statutes, that the record of a mining claim shall contain such a description, by reference to some natural object or permanent monument, as will identify the claim, enumerates the following objects as satisfying the requirements, to wit: *Stone monuments, blazed trees, the confluence of streams, the point of intersection of well*

*known gulches, ravines or roads, prominent buttes, hills, etc.* He also says that the names of adjoining claims should be given, if any.

If the views of this writer be correct, it would be an unwarrantable act to declare this location certificate void, as we are asked to do, for want of necessary references to identify the Paymaster claim.

The words "natural objects and permanent monuments" are general terms, susceptible of different shades of meaning, depending largely upon their application. What might be regarded as a permanent monument for one purpose might not be so considered with reference to a different purpose. So of natural objects. They abound everywhere, but their characteristics vary greatly, some being unstable and ephemeral, others fixed and durable. And since only those possessing the latter qualities are suitable for landmarks, it is evident that such only were intended by the term employed in the section referred to. The framers of the congressional act wisely omitted to specify particular natural objects, or permanent monuments, to which reference should be made, perhaps for the reason that those most suitable for the purpose might not always be available. And when it is considered that the laws of congress do not command the filing of location certificates at all, but only provide that, when required to be filed by local statutes, they shall contain such references as will identify the claims, courts should be slow to adjudge a certificate void for uncertainty on account of the character of the natural objects or permanent monuments to which the claim is tied, especially if, in other respects, it be sufficiently identified.

The salutary principle of law, that forfeitures are not favored, is specially applicable in the decision of such questions.

Judge Sawyer's views as to what objects and monuments will satisfy the law, expressed on the trial of the case of *The Jupiter Mining Co. v. Bodie Co.* 4 Mor. Min.

R. 226-7, are highly instructive upon the point. This eminent jurist observed: "The natural objects or permanent monuments here referred to are not required to be on the ground located, although they may be; and the natural object may consist of any fixed natural object; and such permanent monument may consist of a prominent post or stake firmly planted in the ground or of a shaft sunk in the ground."

Our conclusion deduced from the foregoing reasons, principles and authorities is, that the objection mentioned to the location certificate is not well taken. A tree is certainly a fixed natural object; and as a monument, it is as firmly planted in the ground, and as durable, as a post or stake. It should be marked in some manner so as to be readily identified, unless it possess peculiarities so different from trees in general that a description thereof is sufficient to identify it. Thus marked, naturally or artificially, there would be less room to question the sufficiency of a tree, as a natural object or permanent monument within the meaning of the law, than the sufficiency of a shaft sunk in the ground; for unless the latter be timbered it is doubtful whether it could be said to possess the quality of permanency.

The other objection, that the certificate does not state the distance from the discovery shaft to the side lines, merits no consideration, since there is no such requirement in the law.

We come now to the objections urged at the trial below to the admission in evidence of the plaintiffs' title deeds. These deeds were executed without the state of Colorado, the acknowledgments being taken before notaries public, and the principal ground of objection is, that the authority of the officers taking the acknowledgments was not shown as the statute requires. This objection is most strenuously insisted upon, as fatal to the judgment recovered by the plaintiffs.

Section 21 of the chapter upon conveyances, General Statutes, p. 176, provides that before a deed executed out of this state before any notary public of any state or territory of the United States, or the record thereof, " shall be read in evidence, a copy of the commission of such notary, certified by the secretary of the state or territory, under the seal of such state or territory where such notary was commissioned, shall be recorded in the office of the recorder of the county where the real estate affected by such deed or other instrument in writing is situated." Four of the deeds in question were executed in the county and state of New York, and two thereof in the city of Washington, in the District of Columbia. Copies of the commissions of the New York notaries, properly certified, attested and recorded, were produced in evidence in compliance with the statute.

Two of the New York deeds were acknowledged before T. F. Hascall, notary public, one on the 4th day of February, 1879, the other on the 11th day of the same month. Hascall's commission as notary public bears date February 20, 1877.

The other deeds executed in the state of New York were acknowledged before E. R. McCarthy, notary public, one on the 3d day of February, 1879, the other on the 15th day of the same month. The latter officer's commission bears date February 14, 1878. Both commissions purport to be " for the term of two years, ending March 30, 1884."

The point urged as fatal to the judgment is, that these commissions show on their face that the officers taking the acknowledgments were not qualified to act as notaries public at the dates the same were taken, nor for years afterwards. Defendants' counsel argue that any implication to be drawn from circumstances connected with the transaction must be adverse to the authority assumed by these officers, and asserts as conclusive of this inference

that there were conditions annexed to both commissions making their vitality depend upon the future action of the state senate.

The court below overruled the objections made to the admissibility of these deeds, upon the theory that the dates appearing in the copies of the commissions produced, upon which the terms of office of these notaries were to expire, were clerical errors. There are several considerations which support this theory. In the first place it is a notorious fact that executive commissions are not issued to take effect only after the lapse of years. In the next place the circumstances of the case and the consequences involved show the supposition to be absurd, that such was the intention in this case. Here are two instruments bearing the broad seal of the great state of New York, by which twenty persons are duly commissioned as notaries public, and because of the insertion in figures of dates on which the terms of office are to end, it is gravely contended that ten of these officers are incompetent to take the acknowledgment of a deed for a period of four years, and the other ten for a period of five years after the date of their commissions.

The form of these commissions is positive and unconditional. The title to the office is conferred, and the several officers commissioned are authorized to perform the duties appertaining thereto, for the term of two years. Were it not that "March 30, 1884," is inserted as the *end* of the several terms, there would exist no plausible ground of objection that Hascall and McCarthy were not duly qualified to act as notaries public in February, 1879, when these acknowledgments were taken. This fact alone creates the ambiguities found in these instruments. But the *habendum* clause appearing in a subsequent paragraph of each instrument, affords evidence of a right to administer these offices from the *date* of the commissions. It is as follows: "To have and to hold the said office, together with the fees, profits and advantages to the same

belonging, for and during the time limited by the constitution and laws of our said state." The commissions are, therefore, not only full and complete, but consistent without the figures which give rise to the ambiguity. Applying the well known principle of law, that ambiguous instruments or acts shall, if possible, be construed so as to have a lawful meaning, we have only to discard the evidently erroneous figures, and the meaning becomes at once sensible and consistent. It is a rule that where a deed or other instrument is susceptible of two constructions, one of which the law could carry into effect, while the other would be in contravention of some legal principle or statutory provision, the parties will always be presumed to have intended the former. 2 Best Ev. sec· 347.

This construction is strengthened by the fact that these officers assumed to act by virtue of their commissions, and by the presumptions which obtain in favor of official acts. A man who acts in a public office is presumed to have been rightfully appointed thereto. 1 Phillips' Ev. *605; *Bank of United States v. Dandridge*, 12 Wheat.* 70.

We regard the position of counsel, that conditions were annexed to the commissions making them dependent for vitality upon the future action of the senate, as without foundation in fact or law.

So far as the action of the senate is involved or referred to, that purports to be based upon the *past*, and not upon the *future*, action of that body. It is only in the concluding clause of each instrument, the function of which is to bear *teste* that it was issued by authority, that the senate is mentioned, thus: "Witness Lucius Robinson, governor of our said state (with the consent of our senate), at our city of Albany, the 20th day of February, in the year of our Lord one thousand eight hundred and seventy-seven." The issuing of a commission is the final act which evidences the fact that all necessary steps have been taken to perfect the appointment to office.

Where an appointment to office is vested in the president of the United States, by and with the advice and consent of the senate, the issuing of a commission is held to be conclusive evidence that the appointment has been regularly made, that the consent of the senate has been obtained, and that the person so commissioned is thenceforth entitled to the rights and privileges of the office. *Marbury v. Madison, Secretary, etc.* 1 Cranch, *137.

In respect to the deeds executed in the District of Columbia we deem the authentication sufficient. Courts will not presume that the law-making power intended to require an impossibility. Law is founded in reason, and that which is not reason is not law. Section 21 of the statute which requires a copy of the commission of the notary public, certified by the secretary of the state or territory wherein such notary was commissioned, and the deed executed, refers to organized states and territories. The political organizations mentioned and intended by this section all have such officers as secretaries of state. But the District of Columbia, wherein two of the deeds were executed, it is admitted, has no such officer. Its organization appears to be *sui generis.* It is known, not as a state or territory, but as a *district;* and not having a secretary of state, it cannot be said to be either named or included in the requirements of section 21. Section 13 of the statute makes ample provision for the authentication of the officer's certificate of acknowledgment, in such case, by requiring that there be affixed thereto the certificate of a clerk of a court of record. That requirement is duly complied with, in these instances, by certificates under the hand and seal of the clerk of the supreme court of said district. These deeds, then, being executed in conformity with the statute, were, under the circumstances, properly admitted to be read in evidence.

The only question presented by the entire record upon which we entertain any doubt is, whether the evidence sufficiently showed that the annual labor performed by

the plaintiffs for the year 1880 was of the value of $100. It is conceded that the jury were correctly instructed upon this point, and they found specially that it was of the value mentioned.

The testimony on part of the plaintiffs showed that a contract was let by them for the performance of this labor; that the contract price was $100, and that it was a usual and reasonable price for work of that character and extent, when performed under contract. But the defendants' witnesses testified that the actual value of the labor performed was considerably less than $100, this testimony being based on the price *per diem* of day labor in that vicinity, and the time which it would require to perform the work in question. A review of the whole testimony on the subject leads to the conclusion that the finding of the jury on this point can only be reconciled therewith on the theory that some of the witnesses were discredited.

There are several considerations, upon the merits, favorable to the plaintiffs, and which were, doubtless, before the minds of the jury during the trial. The plaintiffs attempted, in good faith, to comply with the law. They paid the full sum of $100 for the work performed, which is the sum required by law to be expended annually to prevent a forfeiture. The work performed was valuable development work, and it was done in a good, workmanlike manner. It consisted of a drift of at least ten feet in length run in upon the vein, from a point in the shaft several feet below the surface, this drift being over three feet in width, and about six feet in height, the same being properly timbered and lagged.

It is probable that testimony could be obtained to show that nearly all the annual assessment work done upon mining claims was of less value than the law required, excepting those instances where it greatly exceeds the sum of $100. And while the amount paid is not conclusive that work of that value has been done, but the

actual value thereof is the true test whether or not the law has been complied with, yet, where the testimony is conflicting as to the value, it is proper to consider whether there has been a *bona fide* attempt to comply with the law.

It is not strange if these considerations had their weight with the jury in such a contest as this, where it was attempted to appropriate the fruits of the mine-owner's improvements and expenditures on the plea of forfeiture, by proving their annual labor for a single year to be of less value than $100.

It is admitted that there have been three trials of this case — two in the county where the controversies arose, and one in another county to which the cause was removed on change of venue upon application of the defendants, and that three several juries have returned verdicts in behalf of the plaintiffs.

As has often been remarked by this and other courts of last resort, there must be an end to litigation; and, in view of all the circumstances, including the lack of merit in the defense, we do not feel justified in disturbing the judgment in this case. It is, therefore, affirmed.

*Affirmed.*