2012 CO 31

**WAL–MART STORES, INC., Petitioner**

v.

**Larry CROSSGROVE, Respondent.**

**No. 10SC516.**

Supreme Court of Colorado,
En Banc.

April 30, 2012.

Rehearing Denied May 29, 2012.

Harris, Karstaedt, Jamison & Powers, P.C., A. Peter Gregory, Heather A. Salg, Steven R. Helling, Englewood, Colorado, Attorneys for Petitioner.

Barkley Martinez, P.C., Richard P. Barkley, Franklin D. Azar & Associates, P.C., Franklin D. Azar, Robert O. Fischel, Aurora, Colorado, Attorneys for Respondent.

Montgomery, Kolodny, Amatuzio & Dusbabek, L.L.P., Todd L. Vriesman, Denver, Colorado, Attorneys for Amicus Curiae Colorado Defense Lawyers Association.

Davis Graham & Stubbs LLP, Andrew M. Low, Kyle W. Brenton, Denver, Colorado, Attorneys for Amicus Curiae Copic Insurance Company.

The Viorst Law Offices, P.C., Anthony Viorst, Denver, Colorado, Attorneys for Amicus Curiae the Colorado Trial Lawyers Association.

Justice RICE delivered the Opinion of the Court.

¶ 1 In this pre-verdict collateral source case, we determine whether the court of appeals erred when it held that the trial court incorrectly admitted evidence of the amount paid by an insurance provider for the medical expenses Respondent Larry Crossgrove incurred as a result of Petitioner Wal–Mart's negligence. We hold that the court of appeals correctly held that the trial court should have excluded evidence of the amounts paid because the common law evidentiary component of the collateral source doctrine requires the exclusion. We thus affirm the judgment of the court of appeals.

## I. Facts and Procedural History

¶ 2 An overhead garage door struck Crossgrove on the head while he delivered cookies to a Wal–Mart store in Trinidad, Colorado. Crossgrove required medical treatment for injuries suffered in the accident. Crossgrove's healthcare providers billed almost $250,000 for their services. Crossgrove's insurer, however, paid the providers $40,000 in full satisfaction of the bills.

¶ 3 Crossgrove brought a negligence action against Wal–Mart in Las Animas County District Court. Prior to trial, the parties submitted written arguments concerning the admissibility of evidence of the amounts paid by Crossgrove's insurer to satisfy the medical bills. The trial court ruled that the amounts paid should be admitted "in regards to the reasonable and necessary value of [medical] services rendered." In so ruling, the trial court relied on the court of appeals' holding in *Lawson v. Safeway, Inc.,* 878 P.2d 127 (Colo.App.1994), which states that the

amount paid for medical expenses is "some evidence of their reasonable value."[1]

¶ 4 After Crossgrove's counsel raised an ongoing objection to the trial court's ruling, the parties stipulated that Crossgrove's healthcare providers accepted $40,000 in satisfaction of Crossgrove's medical bills. The case proceeded to trial, during which Crossgrove testified that his healthcare providers billed about $250,000 for their services. The trial court instructed the jury to consider Crossgrove's past and future losses, including his "reasonable and necessary medical, hospital, and other expenses" when determining economic damages. The jury returned a verdict in Crossgrove's favor. It awarded him $50,000 in economic damages and $27,375 in noneconomic damages. It also determined that Crossgrove was 20 percent at fault for his injuries.

¶ 5 Crossgrove moved for a new trial, arguing that the trial court erred by admitting evidence of payments made on his behalf by his insurer, a collateral source. Wal–Mart simultaneously moved the trial court to reduce Crossgrove's $50,000 economic damages award by $40,000 under section 13–21–111.6, C.R.S. (2011)—Colorado's post-verdict collateral source statute. The trial court denied Crossgrove's motion for a new trial and granted Wal–Mart's motion for reduction of the verdict. It reduced the jury's $77,375 award by 20 percent to account for Crossgrove's attributed fault, and by $40,000 for the medical expense coverage that Crossgrove received from his insurer. The trial court then entered judgment in favor of Crossgrove in the amount of $21,900, plus interest.

¶ 6 Crossgrove appealed the judgment to the court of appeals on the grounds that the trial court erred by admitting evidence of the amounts paid by Crossgrove's insurer. Based on its application of Colorado's collateral source rule, the court of appeals reversed the trial court's ruling regarding the admissibility of the amounts paid evidence and remanded the case for a new trial. We granted Wal–Mart's subsequent petition for certiorari.[2]

## II. Standard of Review

 ¶ 7 We review evidentiary rulings for an abuse of discretion. *Hock v. New York Life Ins. Co.*, 876 P.2d 1242, 1251 (Colo. 1994). A trial court necessarily abuses its discretion if its ruling is based on an incorrect legal standard. *BP Am. Prod. Co. v. Patterson*, 263 P.3d 103, 108 (Colo.2011). Whether the trial court applied the correct legal standard is a question of law we review de novo. *Corsentino v. Cordova*, 4 P.3d 1082, 1087–88 (Colo.2000).

## III. Collateral Source Rule

¶ 8 We hold that the court of appeals correctly determined that the trial court abused its discretion by admitting evidence of the amounts paid by a collateral source because the trial court did not apply the correct legal standard when it ordered the admission of the evidence. The trial court should have applied the pre-verdict evidentiary component of Colorado's collateral source rule which requires the exclusion of evidence of the amounts paid. We therefore affirm the court of appeals' decision based on the collateral source doctrine, described below.

### A. Common Law

¶ 9 Colorado's collateral source rule consists of two components: (1) a post-verdict setoff rule, codified at section 13–21–111.6; and (2) a pre-verdict evidentiary component, described by the common law.[3] To under-

---

1. The trial court also cited, as persuasive support, two unpublished collateral source cases out of the federal district court. *Grabau v. Target Corp.*, No. CIVA06CV01308–WDMKLM, 2008 WL 659776 (D.Colo. Mar.6, 2008); *Walters v. Encompass Ins. Co. of Am.*, Civil No. 06–cv–01688–LTB–KLM, 2007 WL 3090766 (D.Colo. Oct.18, 2007). Both cases cited *Lawson* and admitted evidence of the amount billed and the amount paid for medical expenses. *Grabau*, 2008 WL 659776, at *2; *Walters*, 2007 WL 3090766, at *2–3.

2. We granted certiorari on the following issue:

Whether the court of appeals erred in holding that the amount accepted in full payment for medical treatment was inadmissible in light of *Kendall v. Hargrave*, 142 Colo. 120, 123, 349 P.2d 993, 994 (1960) and its progeny, the common law collateral source rule, Colorado's collateral source statute, section 13–21–111.6, C.R.S. (2010) and section 10–1–135(10)(a), C.R.S. (2010).

3. The Legislature codified the evidentiary component of the collateral source rule in 2010. *See* § 10–1–135(10)(a), C.R.S. (2011). While this opinion is consistent with section 10–1–

stand the pre-verdict evidentiary component, which controls this case, one must first understand the common law and policy principles underlying both elements of the doctrine.

¶ 10 Prior to the enactment of section 13–21–111.6, the common law collateral source rule required that "compensation or indemnity received by an injured party from a collateral source, wholly independent of the wrongdoer and to which the wrongdoer has not contributed, will not diminish the damages otherwise recoverable [by the injured party] from the wrongdoer." *Colo. Permanente Med. Grp., P.C. v. Evans*, 926 P.2d 1218, 1230 (Colo.1996) (quoting *Kistler v. Halsey*, 173 Colo. 540, 545, 481 P.2d 722, 724 (1971)). The policy underlying this rule was that a tortfeasor should not benefit, in the form of reduced damages liability, from an injured party's receipt of collateral source benefits. *Volunteers of Am. v. Gardenswartz*, 242 P.3d 1080, 1083 (Colo.2010); *Van Waters & Rogers, Inc. v. Keelan*, 840 P.2d 1070, 1075 (Colo.1992).

¶ 11 To effectuate this policy goal, the collateral source rule applied post-verdict to prevent a trial court from reducing a successful plaintiff's damages on account of the plaintiff's receipt of a collateral source benefit. See *Van Waters*, 840 P.2d at 1075; see *also, e.g., Powell v. Brady*, 30 Colo.App. 406, 496 P.2d 328, 332–33 (1972) ("The collateral source doctrine, as applied in Colorado, provides that damages recoverable for a wrong are not diminished because the injured party has been wholly or partially indemnified or compensated for his loss by insurance effected by him and to which the wrongdoer did not contribute.").

¶ 12 The common law doctrine also applied pre-verdict to bar evidence of collateral source benefits because such evidence could lead the fact-finder to improperly reduce the plaintiff's damages award on the grounds that the plaintiff already recovered his loss from the collateral source. *Carr v. Boyd*,

123 Colo. 350, 356–57, 229 P.2d 659, 663 (1951) ("Benefits received by the plaintiff from a source other than the defendant and to which he has not contributed are not to be considered in assessing the damages."); see also *Moyer v. Merrick*, 155 Colo. 73, 80, 392 P.2d 653, 656–57 (1964) (since money received from a pension plan to which an employee had contributed was within the collateral source rule, evidence of receipt by plaintiff of pension benefits in an action for damages resulting from the defendant's negligence was inadmissible).

¶ 13 As the United States Supreme Court reasoned in *Eichel v. New York Central Railroad Co.*, 375 U.S. 253, 254–55, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963), evidence of a plaintiff's receipt of collateral source benefits is not only "inadmissible to offset or mitigate damages," but also "involves a substantial likelihood of prejudicial impact" if admitted for other purposes because "evidence of collateral benefits is readily subject to misuse by a jury." Thus, Colorado's common law collateral source rule completely bars the admission of collateral source evidence. *Carr*, 123 Colo. at 359, 229 P.2d at 664; see *Eichel*, 375 U.S. at 254–55, 84 S.Ct. 316; see *also* CRE 403 (requiring exclusion of evidence, even if relevant, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury").[4]

### B. Section 13–21–111.6 Abrogates the Post–Verdict Component of the Common Law Collateral Source Rule

¶ 14 The common law collateral source rule, applied both pre- and post-verdict, often resulted in a tort plaintiff's double recovery of medical expenses because a collateral source would cover expenses incurred as a result of a tortfeasor's negligence, and then the plaintiff could recover the expenses again from the tortfeasor in the form of damages. To limit these double recoveries, the General

135(10)(a), and with our opinion interpreting that statute—*Smith v. Jeppsen*, 2012 CO 32, 277 P.3d 224 (released concurrently with this opinion)—section 10–1–135(10)(a) does not control this case because recovery occurred in the underlying action prior to the effective date of the statute.

4. We do not opine as to whether evidence of amounts paid by a collateral source for medical expenses is relevant to the reasonable value of those expenses because, whether relevant or not, the evidence is excluded under the collateral source doctrine.

Assembly enacted section 13–21–111.6 to abrogate the post-verdict component of the common law rule. *Gardenswartz,* 242 P.3d at 1084. As such, section 13–21–111.6 requires the trial court to reduce a successful plaintiff's verdict as a matter of law by the amount the plaintiff "has been or will be wholly or partially indemnified or compensated for his loss by any other person, corporation, insurance company or fund in relation to the injury ... sustained."

¶ 15 The statute also, however, preserves the common law post-verdict component of the collateral source doctrine to a limited extent by prohibiting trial courts from reducing a plaintiff's verdict by the amount of indemnification or compensation that the plaintiff has received, or will receive in the future, from "a benefit paid as a result of a contract entered into and paid for by or on behalf of" the plaintiff. § 13–21–111.6; *see also Van Waters,* 840 P.2d at 1078–79.

¶ 16 Like the common law collateral source rule, the contract exception prevents the tortfeasor from benefitting from the plaintiff's purchase of insurance. It does not necessarily, however, result in double recovery by the plaintiff because the plaintiff must often subrogate the party with whom he contracted. Under the common subrogation framework, an insurer pays for the plaintiff's medical expenses up front, then the plaintiff collects the cost of the treatment from the tortfeasor under the contract exception in section 13–21–111.6. *Gardenswartz,* 242 P.3d at 1092 (Rice, J., dissenting). After receiving the damages award, the plaintiff reimburses the insurer for the cost of the treatment. *Id.* Thus, even though section 13–21–111.6 prohibits the trial court from deducting from the plaintiff's damages the amount paid by a party with whom the plaintiff has contracted, the plaintiff's subrogation obligation will prevent his double recovery.

### C. Section 13–21–111.6 Does Not Abrogate the Pre–Verdict Evidentiary Component of the Common Law Rule

■ ¶ 17 To determine whether section 13–21–111.6 also abrogates the pre-verdict evidentiary component of the collateral source doctrine, we employ standard constructs of statutory interpretation. We interpret statutes to give effect to the intent of the General Assembly, looking first to the statute's plain language. *Vigil v. Franklin,* 103 P.3d 322, 327 (Colo.2004). We need not look beyond this plain language if a statute is clear and unambiguous on its face. *Id.* Where the interaction of common law and statutory law is at issue, we respect the General Assembly's authority to modify or abrogate the common law, but can only recognize such changes when they are clearly expressed. *Id.*

■ ¶ 18 As the court of appeals correctly held, the plain language of section 13–21–111.6 indicates that the statute only abrogates the post-verdict portion of the common law collateral source rule. *Crossgrove v. Wal–Mart Stores, Inc.,* 280 P.3d 29, ——, 2010 WL 2521744 (Colo.App.2010). It does not clearly express a legislative intent to modify the pre-verdict evidentiary component. As such, the common law principle stated in *Carr* remains in place and bars from admission all evidence of benefits from a collateral source received by a plaintiff. 123 Colo. at 353–57, 229 P.2d at 661–63; *see also Gardenswartz,* 242 P.3d at 1083–84 ("[T]he collateral source rule prohibits a jury or trial court from ever considering payments or compensation that an injured plaintiff receives from his or her third-party insurance."). As explained in the following section, this evidentiary principle controls in collateral source cases, like this one, in which amounts paid evidence is offered for the purpose of determining the reasonable value of medical services.

### IV. Resolving the Tension between the Collateral Source and Reasonable Value Rules

¶ 19 We recognize the tension between the pre-verdict evidentiary component of the collateral source rule that controls this case and the reasonable value rule stated in *Kendall v. Hargrave,* 142 Colo. 120, 123, 349 P.2d 993, 994 (Colo.1960). In *Kendall,* we held that "the correct measure of damages is the necessary and reasonable value of the [medical] services rendered." *Id.* In addition, we stated that the amount paid for medical services "is some evidence of their reasonable value." *Id.* Thus, *Kendall* allows trial courts to admit

evidence of the amount paid for healthcare for the purpose of ascertaining the reasonable value of those medical expenses. *Id.; see also Palmer Park Gardens, Inc. v. Potter,* 162 Colo. 178, 185, 425 P.2d 268, 272 (Colo.1967); *Lawson,* 878 P.2d at 131. This line of cases contradicts the rule stated in *Carr,* and reiterated in *Gardenswartz,* that a trial court must exclude evidence of amounts paid for medical services to prevent the fact finder from improperly reducing a damages award due to the existence of a collateral source. *Carr,* 123 Colo. at 359, 229 P.2d at 664; *Gardenswartz,* 242 P.3d at 1083–84.

¶ 20 To resolve this friction between our collateral source precedent and the reasonable value rule, we hold that the pre-verdict evidentiary component of the collateral source rule prevails in collateral source cases to bar the admission of the amounts paid for medical services. Admitting amounts paid evidence for any purpose, including the purpose of determining reasonable value, in a collateral source case carries with it an unjustifiable risk that the jury will infer the existence of a collateral source—most commonly an insurer—from the evidence, and thereby improperly diminish the plaintiff's damages award. *See Gardenswartz,* 242 P.3d at 1083; see also, *e.g., Sunahara v. State Farm Mut. Auto. Ins. Co.,* 2012 CO 30, ¶ 16 (released concurrently) (jury erroneously awarded plaintiff $0 in past economic damages after hearing evidence of the amounts paid by plaintiff's insurer to cover medical expenses).

¶ 21 Due to the nature of modern healthcare billing practices, a reasonable juror could easily infer the existence of a collateral source if presented with evidence, for example, that the provider accepted $40,000 in satisfaction of a $250,000 medical bill. Healthcare providers routinely accept payment from private insurance companies significantly below the amount billed to a patient because the provider receives advantages from dealing with insurance companies beyond simple payment. *Crossgrove,* 280 P.3d at ——. These benefits include the assurance of prompt reimbursement, assured collectability of the reduced amount, increased administrative efficiency in collection, and access to a larger patient

pool comprised of the insurer's customers. *Id.*

¶ 22 Additionally, the government sets the rates that providers who honor public insurance programs, like Medicare and Medicaid, must accept for certain services. *See generally* 42 C.F.R. pt. 412 (2011) (setting out the procedure used by Medicare to set its rates). These amounts are often significantly lower than those billed by the provider. *Id.* Thus, as is the case with private insurance companies, healthcare providers accept significantly less than the amount billed for certain services in satisfaction of government insured patients' bills.

¶ 23 On the other hand, healthcare providers rarely accept discounted amounts to satisfy the bills of uninsured patients. *See, e.g., Nygaard v. Sioux Valley Hosp. & Health Sys.,* 731 N.W.2d 184, 188–89 (S.D.2007) (class action by uninsured plaintiffs who were charged full, undiscounted prices for hospital services); *see also* Mark A. Hall & Carl E. Schneider, *Patients as Consumers: Courts, Contracts, and the New Medical Marketplace,* 106 Mich. L.Rev. 643, 663 (2008) ("Since uninsured patients are protected in this Darwinian marketplace by neither insurers nor regulators, hospitals are loosed to charge what they will."); David Stahl, *Health Care Reform: Presumptively Reasonable Rates for Necessary Medical Services,* 35 Nova L.Rev. 175, 180 (2010) (discussing healthcare billing practices for uninsured patients). As such, a reasonable juror will likely infer the existence of a collateral source if presented with evidence of a lower amount paid to satisfy a higher amount billed because, unlike cases involving uninsured patients, providers routinely accept discounted rates to satisfy insured patients' bills. The risk of prejudice—in the form of reduced damages—against the insured plaintiff as a result of such an inference justifies the application of the common law pre-verdict collateral source rule instead of the reasonable value rule in collateral source cases. *See Eichel,* 375 U.S. at 254–55, 84 S.Ct. 316; *see also* CRE 403.

¶ 24 Furthermore, neither *Kendall* nor its progeny provided the appellate courts with occasion to analyze the negative ramifi-

cations of admitting evidence of the amounts paid for medical services by a collateral source. Taking these potentially prejudicial ramifications into account, as discussed above, we agree with the court of appeals that trial courts must exclude evidence of amounts paid by a collateral source "even to show the reasonable value of services rendered." *Crossgrove*, 280 P.3d at ———.[5]

## V. Amounts Paid Evidence is Inadmissible in this Case

■■ ¶ 25 Evidence of the $40,000 paid by Crossgrove's insurance provider is inadmissible under the controlling pre-verdict evidentiary component of the collateral source rule because it is evidence of a collateral source benefit. A plaintiff's insurer is a collateral source because it is a third party wholly independent of the tortfeasor to which the tortfeasor has not contributed. *Van Waters*, 840 P.2d at 1074 (quoting *Kistler*, 173 Colo. at 545, 481 P.2d at 724). The $40,000 paid in satisfaction of Crossgrove's medical bills is a collateral source benefit because it is an amount paid to a healthcare provider by a collateral source on an insured plaintiff's behalf. Thus, the pre-verdict evidentiary component of the collateral source doctrine requires the exclusion of the amounts paid evidence. *See Gardenswartz*, 242 P.3d at 1083–84. As such, the court of appeals properly reversed the trial court's order admitting evidence of the $40,000 paid by Crossgrove's insurer.

## VI. Conclusion

¶ 26 The court of appeals correctly determined that the common law pre-verdict evidentiary component of the collateral source rule bars the admission of evidence of the amounts paid for medical services in collateral source cases. We therefore affirm the court of appeals' decisions to vacate the trial court's judgment as to the amount of damages, and to remand the case for a new trial on the damages issue.

**Justice EID** dissents, and **Justice COATS** and **Justice BOATRIGHT** join in the dissent.

Justice EID, dissenting.

¶ 27 The medical providers in this case billed the plaintiff $242,000 for medical services, but accepted $40,000 from plaintiff's health insurer as payment in full. Under longstanding precedent recognizing that what is paid for something is relevant to its value, *see Quimby v. Boyd*, 8 Colo. 194, 6 P. 462 (Colo.1885), the $40,000 figure was properly admitted in this case as relevant to the reasonable value of the medical services provided. The majority, however, would permit the jury to hear only the $242,000 figure, on the ground that the $40,000 figure runs afoul of the collateral source doctrine. In my view, however, the collateral source doctrine is not implicated in this case. The $40,000 figure represents the amount accepted by the medical providers as payment for their services, regardless of who paid it. Indeed, the fact that a health insurer—or, for that matter, the plaintiff or another party—paid the amount is entirely irrelevant, and the jury may, at the discretion of the district court, be so instructed. Because the majority concludes otherwise, I respectfully dissent.

¶ 28 Since the early years of statehood, this court has recognized the common sense proposition that the amount paid for something is relevant to its reasonable value. *See, e.g., Quimby*, 8 Colo. at 208, 6 P. at 471 (the "amount paid" for mining work is evidence of reasonable value of work performed, but not "conclusive" evidence); *McCormick v. Parriott*, 33 Colo. 382, 80 P. 1044, 1045 (Colo.1905) (the "amount paid" for assessment work "was admissible, as bearing upon its value" (citing *Quimby* )). Almost ninety years ago, this court applied this principle to the amount paid for medical services, holding that "the amount paid for [medical] services is some evidence as to their reasonable value." *Oliver v. Weaver*, 72 Colo. 540, 547, 212

---

5. Wal–Mart and amicus curiae Copic Insurance Company argue that a jury instruction could eliminate any confusion surrounding the purpose of admitted evidence of the amounts paid by a collateral source. We reject this position because the evidentiary component of the collateral source rule does not say that evidence of amounts paid is admissible for certain purposes and inadmissible for others. It simply says that such evidence is inadmissible. *Carr*, 123 Colo. at 356–57, 229 P.2d at 663. Thus, admitting the evidence at all, even with an explanatory jury instruction, would violate our collateral source precedent.

P. 978, 981 (1923) (citing *Townsend v. Keith,* 34 Cal.App. 564, 168 P. 402 (1917)); *accord Kendall v. Hargrave,* 142 Colo. 120, 349 P.2d 993, 994 (1960); and *Palmer Park Gardens, Inc. v. Potter,* 162 Colo. 178, 425 P.2d 268, 272 (1967). In this case, although plaintiff was billed $242,000 for the medical services he received, he actually paid (through his insurer) $40,000 for the services. Under a straightforward application of the amount-paid principle, the $40,000 accepted by the providers in this case is relevant to the reasonable value of the services that were provided.

¶ 29 The majority, however, would keep the $40,000 figure from the jury, and instead only permit it to hear the $242,000 figure—an amount that no one actually paid. *Cf. Volunteers of America v. Gardenswartz,* 242 P.3d 1080, 1092 (Colo.2010) (Rice, J., dissenting) (noting that "neither the plaintiff nor his insurer ever actually incur[s]" damage for amounts billed that are not paid). Under the majority's approach, evidence that we have repeatedly held to be relevant is excluded, and the jury is left with what is at best an incomplete picture of the services' reasonable value. *See Grabau v. Target Corp.,* No. 06–CV–01308, 2008 WL 659776, at *2 (D.Colo. Mar. 6, 2008) (holding that "the probative value of the amounts billed without the corresponding evidence of the amounts paid in satisfaction of those bills would be a substantial risk of unfair prejudice to [the] [d]efendant"); *Gardenswartz,* 242 P.3d at 1090 (Rice, J., dissenting) (characterizing the amounts billed by providers as "theoretical damages").

¶ 30 The majority arrives at this result by citing the common law collateral source doctrine, under which, as we stated in *Carr v. Boyd,* "[b]enefits received by the plaintiff from a source other than the defendant and to which he has not contributed are not to be considered in assessing the damages." 123 Colo. 350, 356–57, 229 P.2d 659, 663 (1951). The majority concludes that because plaintiff's health insurer paid $40,000 for the medical services, the common law collateral source rule must be implicated. Maj. op. at ¶ 20. But the scope of the collateral source doctrine is not so broad. Under our prece-

dent, the $40,000 figure represents the amount accepted by the providers as payment for their services. Who paid the amount—be it the plaintiff himself, a relative or friend of the plaintiff, or an insurer—is entirely irrelevant. *See, e.g., Kendall,* 142 Colo. at 122, 349 P.2d at 994 (plaintiff paid for medical services). The key is that the collateral source doctrine is implicated only where, in the words of *Carr,* the defendant seeks to introduce evidence of "benefits received" for "the purpose of mitigating damages." 123 Colo. at 356–57, 359, 229 P.2d at 663–64. Where the defendant does not seek to introduce evidence of "benefits received," but rather only evidence of amounts accepted as payment, the collateral source doctrine does not come into play.

¶ 31 This case well illustrates the point. Here, the parties stipulated to the fact that the medical providers accepted $40,000 as payment for their services. This fact was introduced to the jury through the statement of counsel.

¶ 32 [1] No mention was made of who paid the $40,000. Plaintiff's counsel had the opportunity to argue that the amount billed, rather than the amount paid, was the proper measure of reasonable value of the services. When presented in this way, "the difference [between the amount billed and the amount accepted as payment] served only to give the jury a financial benchmark for the extent of [the plaintiff's injuries] without introducing prejudicial evidence that [the plaintiff] carried insurance." *Gardenswartz,* 242 P.3d at 1091 (Rice, J., dissenting).

¶ 33 The majority believes that if a jury learns that a medical provider has accepted an amount less than what was billed, it will assume that a health insurer negotiated the lesser amount, and then further assume that the plaintiff has already been fully compensated, leading it to award no damages. Maj. op. at ¶¶ 20–23. Yet the majority's theory is belied by the very facts of this case, in which the jury awarded the plaintiff $50,000 in economic damages, not zero—despite the intro-

---

1. Defense counsel stated: "The parties have stipulated that $40,000 was accepted by the health care providers in full payment of all [plaintiff's] medical bills ... in this action."

duction of the fact that the medical providers accepted an amount less than what was billed. *Id.* at ¶ 4. Indeed, "[d]ue to the nature of modern" insurance practices, *id.* at ¶ 21, a jury is just as likely to infer that the insurer will recover from the plaintiff any sum it may have paid to the medical provider. *See, e.g.,* § 10–1–135(3)(a)(I), C.R.S. (2011) ("Reimbursement or subrogation pursuant to an insurance policy . . . is permitted only if the injured party has first been fully compensated for all damages arising out of the claim."); *Gardenswartz*, 242 P.3d at 1092 (Rice, J., dissenting) (discussing subrogation). The point is that, as noted above, the jury is being asked to arrive at the reasonable value of medical services provided to the plaintiff. The fact that an insurer or other party paid for those services is irrelevant—and the jury may be so instructed, at the discretion of the trial court.

¶ 34 Furthermore, the court's decision in *Gardenswartz* does not preclude the introduction of the fact that a medical provider has accepted an amount less than what was billed, maj. op. at ¶¶ 19–20, 25, and in fact supports it. In that case, this court determined the impact of the collateral source doctrine in the post-verdict, not pre-verdict, context. In fact, in addressing the pre-verdict context, the court stated that:

> the trial setting is the proper forum for the parties to present evidence regarding the proper value of an injured plaintiff's damages. . . . [The defendant] conceded at oral argument that it chose not to contest the valuation of [the plaintiff's medical services]. . . . The jury determined [the plaintiff's] award accordingly. It is unwarranted speculation to substitute [the insurer's] discounted healthcare provider rates for the jury's determination regarding the reasonable value of the medical services rendered to [the plaintiff].

242 P.3d at 1087 (emphasis added). In other words, this court suggested that the defendant could have presented evidence of the amount accepted by the medical providers as it related to reasonable value, but simply chose not to. Applying *Gardenswartz*'s rea-

soning to the case at bar, the $40,000 figure was properly introduced at trial as relevant to the reasonable value of medical services provided.

¶ 35 Finally, the majority's rationale leads to unintended consequences for those plaintiffs who themselves negotiate a reduction in the billed amount. For example, had the plaintiff in this case negotiated the $40,000 amount and paid it, there is no question that the figure would be admitted under the reasonable value precedent discussed above. In other words, under the majority's reasoning, if the plaintiff pays the discounted amount himself, the jury hears the $40,000 and the $242,000 figures; if insurance pays, it hears only the $242,000 figure. This example demonstrates the danger of tying the reasonable value calculation to who paid the medical provider, rather than to the medical provider's acceptance of the payment.

¶ 36 In the end, the majority jettisons our longstanding reasonable value precedent because of the irresolvable "tension" with the collateral source doctrine in this case. Maj. op. at ¶ 19. But as noted above, the collateral source doctrine and the reasonable value principle have lived comfortably side-by-side for decades, and do so in this case. Put differently, the "tension" the majority perceives in this case is of its own making. Because the $40,000 figure was properly admitted in this case, I respectfully dissent from the majority's opinion.

I am authorized to state that **Justice COATS** and **Justice BOATRIGHT** join in the dissent.