2021 CO 82 In Re Maribel Ronquillo and Martin Cerda, Plaintiffs v. EcoClean Home Services, Inc. and Jessie Williams, Defendants No. 21SA55
Supreme Court of Colorado, En Banc
December 20, 2021

 Original Proceeding Pursuant to C.A.R. 21 Broomfield County
 District Court Case No. 19CV30332 Honorable Robert W.
 Kiesnowski, Jr., Judge

 Attorneys for Plaintiffs: Bendinelli Law Firm, P.C. Jared J.
 Mazzei Westminster, Colorado

 Attorneys for Defendant EcoClean Home Services, Inc.: Bayer
 & Carey, P.C. Matthew J. Weeber Peter M. Spiessbach
 Denver, Colorado

 Attorneys for Defendant Jessie Williams: Pearl Schneider
 Young, LLC Jason R. Young Lakewood, Colorado

 Attorneys for Amici Curiae Colorado Defense Lawyers
 Association Colorado Civil Justice League: Messner Reeves LLP
Caleb Meyer Adam Royval Denver, Colorado

 Attorney for Amicus Curiae Colorado Trial Lawyers
 Association: Sawaya, Rose, McClure & Wilhite, P.C. Robert
 E. Caldwell, Jr. Denver, Colorado

 Attorney for Amici Curiae Injury Finance, LLC and Marrick
 Medical Finance LLC: Perkins Coie LLP Michael A. Sink Denver,
 Colorado

 OPINION

 MÁRQUEZ, JUSTICE

 ¶1
 This interlocutory appeal brought under C.A.R. 21 raises the
 narrow question of whether a medical finance company is a
 collateral source for purposes of the pre-verdict evidentiary
 component of Colorado's collateral source rule.
Plaintiffs, Maribel Ronquillo and her husband Martin Cerda,
 challenge the district court's order finding that Injury
 Finance, LLC, a medical finance company with whom Plaintiffs
 have a lien agreement, is not a collateral source, and that
 therefore, Defendants Jessie Williams and EcoClean Home
 Services may offer evidence at trial of Ronquillo's and
 her healthcare providers' relationship with Injury
 Finance, as well as evidence of the amounts billed and paid
 for Ronquillo's medical treatment.

 ¶2
We agree with the district court that Injury Finance is not a
 collateral source. Collateral sources must confer a
 "benefit," as defined in section 10-1-135(2)(a),
 C.R.S. (2021), onto the injured party. Under the terms of the
 lien agreement here, Injury Finance purchased Ronquillo's
 accounts receivable from her healthcare providers, thereby
 allowing Ronquillo to receive prompt medical care for
 injuries sustained in an automobile collision with Williams.
In return, Injury Finance received the right to collect the
 full amount billed by Ronquillo's healthcare providers
 and a lien on any settlement or verdict she obtains through
 litigation regarding the accident. Importantly, Ronquillo
 remains individually liable to Injury Finance for the full
 amounts billed by her healthcare providers whether or

 not she obtains a favorable verdict. Thus, Ronquillo has not
 received a benefit from Injury Finance for purposes of the
 collateral source rule because her arrangement with Injury
 Finance does not reduce her financial obligations. Our
 conclusion is unaffected by the recently enacted House Bill
 21-1300, codified at section 38-27.5-101 to -108, C.R.S.
 (2021). Although this statute precludes discovery of certain
 evidence pertaining to medical finance companies,
 see § 38-27.5-103(2), C.R.S. (2021), it also
 fundamentally changes the nature of these agreements going
 forward by requiring companies like Injury Finance, before
 creating a lien, to notify the injured party that
 they[1]
 will not be liable to the lien holder for any portion of the
 lien beyond any judgment or settlement obtained, see
§ 37-27.5-104(1)(c), C.R.S. (2021). Because
 Ronquillo's financial obligation to Injury Finance will
 not necessarily be discharged upon the resolution of the
 underlying litigation, the lien agreement here falls outside
 the scope of the new statute.

 ¶3
 Accordingly, we discharge the rule to show cause and remand
 the case for further proceedings. We express no opinion on
 whether the disputed evidence may be excluded under other
 evidentiary rules such as CRE 401 and 403; we hold

 only that the district court correctly concluded, as a matter
 of statutory interpretation, that the medical finance company
 here is not a collateral source.

 I.
Facts and Procedural History

 ¶4
 In August 2016, Ronquillo was in an automobile collision.
According to her complaint, Ronquillo was rear-ended by
 Williams, who was operating a vehicle owned by an EcoClean
 employee and towing an EcoClean trailer. Ronquillo suffered
 serious physical injuries and incurred around $250, 000 in
 medical expenses.

 ¶5
 At the time of the accident, Ronquillo did not have health
 insurance, so she entered into a medical finance lien
 agreement with Injury Finance. Under the terms of that
 agreement, Injury Finance purchased Ronquillo's accounts
 receivable from her healthcare providers at a predetermined,
 discounted contractual rate, which allowed Ronquillo to
 receive prompt medical care. Injury Finance received a lien
 and security interest in the proceeds of "any settlement
 or verdict in [Ronquillo's] favor until such sums owed .
 . . are paid in full." However, Ronquillo remains
 contractually obligated to repay Injury Finance for "all
 charges billed by the [medical] [p]roviders"-not merely
 the discounted rate Injury Finance received-regardless of the
 result of any litigation.

 ¶6
 Ronquillo and her husband filed suit in Broomfield County
 District Court, alleging negligence and loss of consortium
 against Williams and asserting a

 respondeat superior claim against EcoClean. As part of
 discovery, Defendants subpoenaed Injury Finance, seeking
 information and documents pertaining to Injury Finance's
 accounts receivable purchase rates, provider contracts, and
 business operations and methodologies. When Injury Finance
 did not respond to the subpoena, Defendants filed a motion to
 compel production, which the district court granted.
Defendants also filed a "motion for determination of a
 question of law pursuant to C.R.C.P. 56(h) that Injury
 Finance . . . is not a collateral source[]" subject to
 the pre-verdict evidentiary component of the collateral
 source rule.

 ¶7
 Injury Finance moved to intervene for the limited purpose of
 litigating Defendants' Rule 56(h) motion. It also moved
 to quash the subpoena and sought a protective order. The
 court granted the motion to intervene and issued a temporary
 stay on Injury Finance's discovery obligations pending a
 hearing on whether Injury Finance qualified as a collateral
 source.

 ¶8
 After briefing and oral argument, the district court
 determined that "Injury Finance is not a collateral
 source as defined under C.R.S. § 13-21-111.6."
Consequently, the court ruled that Defendants could offer at
 trial "evidence of the amounts billed and amounts
 paid." The court further ruled that it would "admit
 evidence of the relationship, if any, between Injury Finance
 and plaintiff's medical providers as this evidence may be
 relevant to the issues of bias, motive, or interest and the
 reasonable value of the medical services rendered."

 ¶9
Plaintiffs brought this interlocutory appeal under C.A.R. 21,
 challenging the district court's order. They contend that
 the district court (1) erred in determining that Injury
 Finance is not a collateral source, and (2) "abused its
 discretion by construing the post-verdict contract exception
 to § 13-21-111.6 and the Made Whole Doctrine to mean a
 third-party payor's subrogation rights determine that
 third-party payor's collateral source status." We
 issued a rule to show cause.

 II.
Original Jurisdiction

 ¶10
 Whether to exercise our original jurisdiction pursuant to
 C.A.R. 21 is within our sole discretion. C.A.R. 21(a)(1). We
 generally elect to exercise our discretion in "C.A.R. 21
 cases that raise issues of first impression . . . that are of
 significant public importance." Smith v.
 Jeppsen, 2012 CO 32, ¶ 6, 277 P.3d 224, 226.
"We have previously exercised our original jurisdiction
 to review questions of statutory interpretation."
Id.

 ¶11
We exercise our original jurisdiction in this case because
 this court has not yet determined whether medical finance
 companies are collateral sources under section
 10-1-135(10)(a), and this is an issue of significant public
 importance.

 III.
Analysis

 ¶12
This court reviews evidentiary rulings for abuse of
 discretion. Wal-Mart Stores, Inc. v. Crossgrove,
 2012 CO 31, ¶ 7, 276 P.3d 562, 564. "A trial court
 necessarily abuses its discretion if its ruling is based on
 an incorrect legal standard.

Whether the trial court applied the correct legal standard is
 a question of law we review de novo." Id.
(citation omitted). Questions of statutory interpretation are
 likewise reviewed de novo. McCoy v. People, 2019 CO
 44, ¶ 37, 442 P.3d 379, 389.

 A.
 Colorado's Collateral
Source Rule

 ¶13
 Under Colorado's common law collateral source rule,
 "[c]ompensation or indemnity received by an injured
 party from a collateral source, wholly independent of the
 wrongdoer and to which [the wrongdoer] has not contributed,
 will not diminish the damages otherwise recoverable from the
 wrongdoer." Colo. Permanente Med. Grp., P.C. v.
 Evans, 926 P.2d 1218, 1230 (Colo. 1996) (quoting
Kistler v. Halsey, 481 P.2d 722, 724 (Colo. 1971)).
"The policy underlying this rule was that a tortfeasor
 should not benefit, in the form of reduced damages liability,
 from an injured party's receipt of collateral source
 benefits." Crossgrove, ¶ 10, 276 P.3d at
 565. In other words, because it is solely the
 tortfeasor's responsibility to make the injured plaintiff
 whole, any benefits or gifts obtained from third-party
"collateral" sources accrue solely to the benefit
 of the injured plaintiff and are irrelevant in fixing the
 amount of the tortfeasor's liability. See Volunteers
 of Am. Colo. Branch v. Gardenswartz, 242 P.3d 1080,
 1082-83 (Colo. 2010).

 ¶14
 Colorado's collateral source rule has two components: (1)
 a post-verdict setoff rule, now codified at section
 13-21-111.6, C.R.S. (2021), and (2) a pre-verdict evidentiary
 component, now codified at section 10-1-135(10)(a).

 ¶15
 Under the common law, the collateral source rule applied
 post-verdict to prevent a trial court from reducing a
 successful plaintiff's damages where the plaintiff
 received a collateral source benefit. Van Waters &
 Rogers, Inc. v. Keelan, 840 P.2d 1070, 1074-75 (Colo.
1992). Although the common law rule thus allowed a successful
 plaintiff to receive a double recovery from both the
 tortfeasor and the benefits provider, we determined that
 "[i]f either party is to receive a windfall, the rule
 awards it to the injured plaintiff . . . and not to the
 tortfeasor, who has done nothing to provide the compensation
 and seeks only to take advantage of third-party benefits
 obtained by the plaintiff." Gardenswartz, 242
 P.3d at 1083.

 ¶16
 In 1986, the General Assembly partially abrogated the
 post-verdict setoff component of the common law collateral
 source rule by enacting section 13-21-111.6. Crossgrove,
 ¶ 18, 276 P.3d at 566; see also
Gardenswartz, 242 P.3d at 1084. Section 13-21-111.6
 prevents double recoveries that were permissible under the
 common law rule by requiring the trial court to reduce a
 successful plaintiff's verdict by the amount the
 plaintiff "has been or will be wholly or partially
 indemnified or compensated for his loss by any other person,
 corporation, insurance company or fund." The statute
 does, however, preserve the common law rule to a limited
 extent through a contract exception that prohibits trial
 courts from reducing a plaintiff's verdict "by the
 amount of indemnification or compensation that the plaintiff
 has received, or will receive in

 the future, from a 'benefit paid as a result of a
 contract entered into and paid for by or on behalf of the
 plaintiff." Crossgrove, ¶ 15, 276 P.3d at
 566 (quoting § 13-21-111.6).

 ¶17
 The contract exception, like the common law rule, prevents a
 tortfeasor from benefitting from the plaintiffs purchase of
 insurance, but does not necessarily result in a plaintiff
 receiving a double recovery because the plaintiff must often
 subrogate the party with whom they contracted. Id.
 at ¶ 16, 276 P.3d at 566. In a typical subrogation
 framework, an insurer pays for the injured plaintiffs medical
 costs up front, the plaintiff collects the cost of the
 treatment from the tortfeasor under the contract exception in
 section 13-21-111.6, and the plaintiff then reimburses the
 insurer for the cost of the treatment. Id. So
 although the contract exception prevents the trial court from
 deducting from the plaintiffs damages the amount paid by a
 party with whom the plaintiff has contracted, the plaintiffs
 subrogation obligation will generally prevent double
 recovery. Id.

 ¶18
 The pre-verdict evidentiary component of the collateral
 source rule requires trial courts to exclude evidence of
 "compensation or indemnity" received from a
 collateral source. Id. at ¶ 10, 276 P.3d at 565
(quoting Evans, 926 P.2d at 1230). This component of
 the rule recognizes that evidence of collateral source
 benefits may lead a jury to "improperly reduce the
 plaintiffs damages award on the grounds that the plaintiff
 already recovered his loss from the collateral source."
Id. at ¶ 12,

276 P.3d at 565; see also Gardenswartz, 242 P.3d at
 1083 (citing Carr v. Boyd, 229 P.3d 659, 662-63
(Colo. 1951)) ("To ensure that a jury will not be misled
 by evidence regarding the benefits that a plaintiff received
 from sources collateral to the tortfeasor, such evidence is
 inadmissible at trial."). By excluding collateral source
 information entirely, the rule ensures that tortfeasors will
 not escape liability simply because the injured party had the
 foresight to obtain a benefits provider to offset the risk of
 unexpected medical expenses.

 ¶19
 In 2010, the General Assembly codified the pre-verdict
 evidentiary component of the common law collateral source
 rule by enacting section 10-1-135(10)(a), which provides that
 "[t]he fact or amount of any collateral source payment
 or benefits shall not be admitted as evidence in any action
 against an alleged third-party tortfeasor." See
 Jeppsen, ¶ 19, 277 P.3d at 228 (observing that
 section 10-1-135(10)(a) "unambiguously codifies"
 the common law pre-verdict evidentiary component of the
 collateral source rule).

 B.
Application

 ¶20
 The narrow question before us is whether Injury Finance
 qualifies as a collateral source for purposes of the
 pre-verdict evidentiary component of the collateral source
 rule codified at section 10-1-135(10)(a). As relevant here,
 that section provides: "The fact or amount of any
 collateral source payment or benefits shall not be
 admitted as evidence in any action against an alleged
 third-party tortfeasor

 or in an action to recover benefits under section
 10-4-609." § 10-1-135(10)(a) (emphasis added). The
 parties' disagreement centers on whether Injury Finance
 provided Ronquillo with a "collateral source
 payment" or "benefit" under this
 provision.[2]

 ¶21
 Ronquillo contends that Injury Finance provided a benefit by
 paying for her medical expenses (albeit at a discounted
 rate), thereby allowing her to receive immediate access to
 medical care that she otherwise would not have been able to
 afford. Defendants, by contrast, contend that Ronquillo
 received no true benefit because she remains liable to Injury
 Finance for the full amount billed by her healthcare
 providers regardless of the result of any litigation
 concerning the car accident. For the following reasons, we
 agree with Defendants and hold that Injury Finance is not a
 collateral source.

 ¶22
 Whether medical finance companies, like Injury Finance, are
 collateral sources under section 10-1-135(10)(a) is a
 statutory interpretation issue of first

 impression. "When interpreting a statute, we strive to
 give effect to the legislative purposes by adopting an
 interpretation that best effectuates those purposes."
Jeppsen, ¶ 14, 277 P.3d at 227 (quoting
Smith v. Exec. Custom Homes, Inc., 230 P.3d 1186,
 1189 (Colo. 2010)). "In order to ascertain the
 legislative intent, we first look to the plain language of
 the statute, giving the language its commonly accepted and
 understood meaning." Id. We construe a statute
"as a whole to give 'consistent, harmonious and
 sensible effect to all its parts.'" Bd. of Cnty.
 Comm'rs v. Costilla Cnty. Conservancy
 Dist., 88 P.3d 1188, 1192 (Colo. 2004) (quoting
People v. Luther, 58 P.3d 1013, 1015 (Colo.
2002)).

 ¶23
Section 10-1-135 defines "benefit[]" as the
 "payment or reimbursement of health care expenses . . .
 provided to or on behalf of an injured party under a policy
 of insurance, contract, or benefit plan." §
 10-1-135(2)(a). The statute does not explicitly define
 "collateral source payment." However, section
 13-21-111.6, which codified the post-verdict setoff rule and
 is referenced in section 10-1-135(10)(a), indicates that a
 collateral source payment must actually indemnify or
 compensate the injured party:

[The injured party's] verdict shall not be reduced by the
 amount by which such person, his estate, or his personal
 representative has been or will be wholly or partially
 indemnified or compensated by a benefit paid as a result
 of a contract entered into and paid for by or on behalf of
 such person. The court shall enter judgment on such reduced
 amount.

(Emphasis added.)[3]

 ¶24
 In sum, to qualify as a collateral source, a medical finance
 company must provide a "benefit" or a
 "collateral source payment." Benefits and
 collateral source payments must "indemnif[y],"
"compensate[]," "reimburse" or be a
 "payment" for an injured party's medical
 expenses. §§ 13-21-111.6, 10-1-135(2)(a); see
 also Jeppsen, ¶ 21, 277 P.3d at 228 ("A
 collateral source is a person or company, wholly independent
 of an alleged tortfeasor, that compensates an injured party
 for that person's injuries.").

 ¶25
 As an initial matter, Injury Finance did not indemnify,
 compensate, or reimburse Ronquillo for her medical expenses.
The plain meaning of each of these terms requires that Injury
 Finance offset at least some of Ronquillo's medical debt.
See Indemnify, Merriam-Webster Dictionary,
 https://www.merriam-
 webster.com/dictionary/indemnify [https://perma.cc/8PHD-L58K]
("to make compensation to for incurred hurt, loss, or
 damage"); Compensate, Black's Law
 Dictionary (11th ed. 2019) ("To make an amendatory
 payment to; to recompense (for an injury)");
 Reimburse, Merriam-Webster Dictionary,
 https://www.merriam-

 webster.com/dictionary/reimburse
 [http://perma.cc/PR43-KT77] ("to pay back to
 someone"). Here, Injury Finance paid the healthcare
 providers so Ronquillo could receive prompt medical care.
However, under the terms of their contract, Ronquillo remains
 liable to Injury Finance for the full amount billed by her
 medical providers. Because Injury Finance did not actually
 offset any of her medical debt, Ronquillo has in no way been
 indemnified, compensated, or reimbursed.

 ¶26
 True, the plain meaning of the term "payment," as
 used in section 10-1-135(2)(a), is arguably broader than
 "indemnif[y]," "compensate[]," or
 "reimburse." Still, we cannot conclude that Injury
 Finance paid for Ronquillo's medical expenses simply by
 purchasing her accounts receivable from her healthcare
 providers at a discounted rate. Unlike insurance companies or
 other traditional benefits providers, which actually pay for
 the injured party's medical expenses and thereby reduce
 the party's financial obligations, Injury Finance
 operates like a creditor. After purchasing the injured
 party's accounts receivable from a healthcare provider,
 Injury Finance stands in the shoes of the healthcare provider
 and seeks to recover the full billed amount from the
 injured party without first fully compensating the injured
 party for their injuries. In so doing, Injury Finance
 contravenes the express purpose of the statute at issue,
 which requires that injured parties be "fully
 compensated for [their] injuries and damages before the payer
 of benefits may seek repayment." § 10-1-135(1)(d);
see also

§ 10-1-135(1)(b) ("Reimbursement or repayment of
 benefits should not be permitted when the injured party would
 not be fully compensated . . . ."). Because Injury
 Finance's right to reimbursement is not contingent on
 Ronquillo first being made whole, as mandated by section
 10-1-135(1)(a)-(d), and Injury Finance did not reduce
 Ronquillo's payment obligations, Injury Finance did not
 pay for Ronquillo's medical expenses for the purposes of
 section 10-1-135(2)(a).

 ¶27
 Our interpretation is supported by the purpose of the
 pre-verdict component of the common law collateral source
 rule. Cf. Gardenswartz, 242 P.3d at 1082 ("An
 understanding of the common law collateral source rule is
 essential in interpreting section 13-21-111.6, which codifies
 the collateral source rule."). As noted, the pre-verdict
 component of the rule excluded evidence of collateral sources
 on the grounds that such evidence may cause jurors to
 improperly lower damage awards because the injured party has
 already been compensated by their benefits provider.
Crossgrove, ¶ 12, 276 P.3d at 565;
Gardenswartz, 242 P.3d at 1083. Ronquillo's
 contract with Injury Finance does not raise the same risk.
The contract specifically provides that Ronquillo remains
 liable to Injury Finance for the full amount billed by her
 healthcare providers regardless of the results of any
 litigation. Thus, assuming the jury is made aware of the
 terms of the agreement with Injury Finance, there is no
 reason to suspect that the jury will reduce

 Ronquillo's damage award on the grounds that Ronquillo
 has already been compensated, her debt has been paid, or that
 she will receive a windfall.

 ¶28
 Ronquillo contends that even though her financial obligations
 have not been reduced, Injury Finance still provided her with
 the benefit of receiving prompt medical attention. While this
 is certainly a benefit in the broad sense of the term, it is
 not a benefit as defined in section 10-1-135(2)(a) or for the
 purposes of the collateral source rule. As reasoned above, a
 "benefit" must in some way reduce the injured
 party's payment obligation. Because it is undisputed that
 Ronquillo remains liable to Injury Finance regardless of
 whether she obtains a judgment in her favor, we conclude that
 Ronquillo has not been provided with a benefit and that
 Injury Finance is not a collateral source.

 ¶29
We take no position on whether evidence of amounts paid by a
 collateral source for medical expenses is relevant to the
 reasonable value of those expenses-a question we left open in
 Crossgrove, ¶ 13 n.4, 276 P.3d at 565 n.4-or
 whether the disputed evidence may be excluded under other
 evidentiary rules such as CRE 401 or 403. Those issues were
 not raised in Ronquillo's C.A.R. 21 petition, nor argued
 in her briefing, and therefore are not properly before us.
Ronquillo remains free to pursue such arguments on remand.

 ¶30
We are also cognizant of the concerns expressed by Ronquillo
 and amici that our ruling risks unfairly treating individuals
 who can afford health insurance

 differently from individuals who rely on medical finance
 liens. However, these concerns are immaterial to whether
 Injury Finance is a collateral source. Additionally, as
 explained in more detail in the next section, the General
 Assembly recently passed a bill that changes the structure of
 medical finance liens and precludes the discovery or
 admission of certain evidence pertaining to such liens. Thus,
 the risk of unfair and differential treatment is unlikely to
 arise going forward.

 C.
House Bill 21-1300

 ¶31
 Following our grant of this C.A.R. 21 petition, the General
 Assembly enacted House Bill 21-1300, now codified at section
 38-27.5-101 to -108. The statute precludes the discovery or
 admission of certain evidence pertaining to medical finance
 liens:

any amount paid by an assignee of a health-care provider lien
 for the assignment, the fact of the assignment, and the terms
 of the assignment are not discoverable or admissible as
 evidence in any civil action or claim that the injured person
 asserts against third parties . . . for any purpose,
 including as evidence of the reasonable value of a
 health-care provider's services.

§ 38-27.5-103(2).

 ¶32
 Ronquillo contends that this statute reflects the General
 Assembly's judgment that medical finance liens
 categorically provide benefits to injured parties and fall
 under the pre-evidentiary component of the collateral source
 rule. We are unpersuaded. While this statute certainly
 changes the legal landscape in

cases involving medical finance liens going forward, it is
 inapplicable to this case. Contrary to the express terms of
 Ronquillo's agreement with Injury Finance, House Bill
 21-1300 also states that before a health care provider lien
 is created, the injured person must be notified that
 "[i]f the injured person does not receive a judgment,
 settlement, or payment on the injured person's claim
 against third parties . . . the injured person is not liable
 to the holder of the health-care provider lien for any
 portion of the health-care provider lien." §
 38-27.5-104(c)(I). It continues, "[i]f the injured
 person receives a net judgment, settlement, or payment that
 is less than the full amount of the health-care provider
 lien, the injured person is not liable to the holder of the
 health-care provider lien for any amount beyond the net
 judgment, settlement, or payment." Id. at
 -104(c)(II).

 ¶33
 In short, medical finance liens under section 38-27.5-103(2)
 are treated similarly to traditional insurance arrangements
 for purposes of the collateral source rule. Unlike Injury
 Finance's contract with Ronquillo, liens created under
 the new statute necessarily provide a benefit to the injured
 party because, regardless of the outcome of subsequent
 litigation, the injured party is compensated for their
 medical expenses. Because Injury Finance does not provide
 Ronquillo such a benefit under the lien agreement here, the
 statute does not support concluding that Injury Finance is a
 collateral source.

 IV.
Conclusion

 ¶34
The district court correctly determined that Injury Finance
 is not a collateral source under section 10-1-135(2)(a)
 because it did not provide Ronquillo with a benefit. In so
 doing, it properly looked to section 13-21-111.6 to bolster
 its conclusion. We therefore discharge the rule and remand
 the case for further proceedings consistent with this
 opinion.

 JUSTICE GABRIEL concurs in part and dissents in part, and
 JUSTICE SAMOUR and JUSTICE BERKENKOTTER join in the
 concurrence in part and dissent in part.

 JUSTICE GABRIEL, concurring in part and dissenting in part.

 ¶35
 I agree with much of the majority's analysis in this
 case. In particular, for the reasons that the majority
 articulates, I agree that Injury Finance, LLC, which is a
 medical finance company, does not meet the definition of a
 collateral source. I part company with my colleagues in the
 majority, however, to the extent that they allow to stand (by
 expressing no opinion on) the district court's ruling
 that because the collateral source rule does not apply, the
 defendants will be permitted to introduce at trial evidence
 of (1) the amounts billed and paid for plaintiff Maribel
 Ronquillo's medical treatment and (2) the nature of
 Ronquillo's relationship with Injury Finance. For several
 reasons, I cannot agree with this conclusion.

 ¶36
 First, I cannot subscribe to the majority's decision to
 acquiesce in the district court's relevance ruling based
 on the majority's determination that that issue is not
 properly before us. Maj. op. ¶ 29. Ronquillo asked the
 district court to exclude the evidence now at issue under the
 pre-verdict evidentiary component of the collateral source
 rule, section 10-1-135(10)(a), C.R.S. (2021). The court
 rejected this argument, however, concluding, albeit without
 substantial analysis, that the evidence was relevant and
 therefore admissible, and Ronquillo sought an order to show
 cause why that ruling should not be vacated, expressly
 arguing that the evidence at issue was irrelevant. In these
 circumstances, and particularly given that the district court
 expressly ruled on the relevance question, I would conclude

 that the issue is properly before us, and I would require the
 district court to reconsider its ruling and to assess
 specifically whether the evidence at issue should be admitted
 under CRE 401-403. See Brown v. Am. Standard Ins.
 Co., 2019 COA 11, ¶ 23, 436 P.3d 597, 600
(concluding that because the district court had ruled on the
 issue that the appellant sought to raise on appeal, the issue
 was preserved for review); Battle N., LLC v. Sensible
 Hous. Co., 2015 COA 83, ¶ 13, 370 P.3d 238, 244
(concluding that an issue was properly preserved for appeal
 when, despite ambiguity in the request to the trial court,
 the trial court had ruled on the issue); cf. Comm. for
 Better Health Care for All Colo. Citizens v. Meyer, 830
 P.2d 884, 888 (Colo. 1992) ("It is axiomatic that in any
 appellate proceeding this court may consider only issues that
 have actually been determined by another court or agency and
 have been properly presented for our consideration.").

 ¶37
 I am not persuaded otherwise by the majority's suggestion
 that Ronquillo is free to pursue her relevance arguments on
 remand. Maj. op. ¶ 29. In so stating, the majority
 appears to overlook the fact that Ronquillo has already
 pursued these arguments, and the district court squarely
 rejected them, albeit with limited analysis. It is unclear to
 me why the majority believes that the district court would
 perceive any reason to reconsider arguments that it has
 already contemplated and rejected.

 ¶38
 Second, on the merits, it is not at all clear to me that the
 evidence at issue can properly be admitted under CRE 401-403.
Specifically, without more, I am not persuaded that the
 discounted amounts billed by Ronquillo's treatment
 providers and paid by Injury Finance evince the reasonable
 value of the services provided. Indeed, in Wal-Mart
 Stores, Inc. v. Crossgrove, 2012 CO 31, ¶ 13 n.4,
 276 P.3d 562, 565 n.4, we expressly left open the related
 question of whether evidence of amounts paid by a collateral
 source for medical expenses is relevant to the issue of the
 reasonable value of those expenses. Unlike the majority, I do
 not believe that we should allow such evidence to be admitted
 without adequate consideration of this unresolved and
 significant question of Colorado law.

 ¶39
 Lastly, I am not convinced that the nature of the contractual
 relationships between and among Ronquillo, her treatment
 providers, and Injury Finance establish bias, as amicus
 Colorado Defense Lawyers Association ("CDLA")
 suggests and as the district court appears to have
 determined. The CDLA contends that a treatment provider's
 relationship with a medical finance company like Injury
 Finance creates a clear financial incentive for the provider
 to testify favorably for an injured plaintiff and to maximize
 medical billings with an extended and inflated course of
 treatment. The CDLA thus asserts that a factfinder must be
 permitted to explore such biases. Although, to be sure, the
 issue of bias is ordinarily a relevant consideration at
 trial, the admissibility of bias evidence,

 like the admissibility of other forms of evidence, is subject
 to CRE 403. See United States v. Wilson, 605 F.3d
 985, 1006 (D.C. Cir. 2010) (construing Fed.R.Evid. 403);
United States v. Skelton, 514 F.3d 433, 442 (5th
 Cir. 2008) (same). Thus, evidence of bias may be excluded if
 the probative value of such evidence is substantially
 outweighed by the dangers of unfair prejudice, confusion of
 the issues, or misleading the jury. CRE 403.

 ¶40
 Here, I am unwilling to presume, at least at this stage of
 the proceedings, that Ronquillo's treatment providers
 harbor the biases that the CDLA attributes to them. At a
 minimum, the issue deserves detailed consideration, based on
 the specific facts presented, before the court should allow
 the factfinder to hear evidence regarding the parties'
 relationships with one another and with Injury Finance.

 ¶41
 In my view, further review of these relevance questions is
 particularly appropriate here, given the General
 Assembly's recent amendments to section 38-27.5-103(2),
 C.R.S. (2021). Those amendments, which became effective on
 September 7, 2021 and which presumably would apply as of the
 time of the trial in this case, make clear that the very
 evidence that the district court has deemed admissible is now
 inadmissible as a matter of law. See id. Although
 the majority states that this statute is inapplicable here,
 maj. op. ¶ 32, I do not perceive why that is so. Nor do
 I think that we can turn a blind eye to this significant
 (and, I believe,

 applicable) recent legislation, which, as the majority
 states, "changes the legal landscape in cases involving
 medical finance liens going forward." Id.

 ¶42
 For all of these reasons, I agree that Injury Finance does
 not satisfy the definition of a collateral source, and I
 would discharge the rule to show cause to that extent. I
 would make the rule absolute, however, as to the portion of
 the district court's order admitting the evidence at
 issue without a complete analysis under the applicable rules
 of evidence.

 ¶43
 Accordingly, I respectfully concur in part in and dissent in
 part from the majority's opinion in this case.

 ¶44
 I am authorized to state that JUSTICE SAMOUR and JUSTICE
 BERKENKOTTER join in this concurrence in part and dissent in
 part.

---------

Notes:

[1] We are intentionally using the
 singular "they" in this opinion.

[2] We note that though Injury Finance now
 contends that it provided Ronquillo a "benefit"
 under section 10-1-135(10)(a), its lien agreement with
 Ronquillo expressly states that "Injury Finance is not a
 'Payer of Benefits' as defined by Section
 10-1-135(2)(c)(1)" and that because "Injury Finance
 does not provide . . . insurance or health benefits . . . [it
 is not] subject to any provisions set forth in Section
 10-1-135." We nevertheless choose to address the
 questions of statutory interpretation presented by
 Ronquillo's petition.

[3] Ronquillo contends that the district
 court construed section 13-21-111.6 to mean that a
 third-party payor's subrogation rights determine its
 collateral source status. We disagree with this
 interpretation of the court's analysis. The district
 court simply looked to this provision for insight into
 whether Ronquillo received a benefit, as defined in section
 10-1-135(2)(a).

---------